[No. C. D. 2778. *En Banc.* October 5, 1945.]

*In the Matter of the Application of* PIERCE LONERGAN *for Reinstatement as an Attorney at Law.*[1]

[1]Reported in 162 P. (2d) 289.

*W. H. Harris,* for petitioner.

*S. H. Kelleran,* for board of governors.

ROBINSON, J.—We have before us for disposition the third petition of Mr. Pierce Lonergan for reinstatement to the bar of the state of Washington. In all three instances, the granting of his petition has been recommended by the board of governors of the state bar association. In the first two instances, the board's recommendation was not followed. No formal opinion was filed in either of these cases. In this instance, since we have concluded to grant the petition, an opinion must be written. The whole matter will be reviewed, for two reasons: First, in justice to the petitioner, lest inferences unduly unfavorable to him may be drawn from the fact that the first two petitions were denied; and second, because the course which this matter has taken is illustrative of an apparently general lack of appreciation of the problem which confronts the court when a disbarred attorney applies for reinstatement.

Mr. Lonergan was admitted to the bar of Washington in 1914, and practiced law as a successful and well-respected member thereof for a period of twenty years. In 1934, however, he was indicted in a Federal mail fraud case growing out of his participation in an effort to establish in Seattle a speculative market in silver futures. He was convicted in the Federal district court for the western district of Washington in May, 1936, and sentenced to three

years in a Federal penitentiary. On appeal to the circuit court of appeals of the ninth circuit, his conviction was affirmed. *Lonergan v. United States*, 88 F. (2d) 591. The supreme court of the United States granted a writ of certiorari but, on an examination of the record, instead of passing upon the merits, reversed the judgment of the circuit court of appeals and remanded the case to that court, with instructions to give further consideration to certain assignments of error. *Lonergan v. United States*, 303 U. S. 33, 82 L. Ed. 630, 58 S. Ct. 430.

The circuit court again affirmed the judgment of the district court, but, in passing upon a petition for rehearing, one of the three judges who sat in the case filed a dissent, stating that, upon a re-examination of the record, he had concluded that hearsay statements had been admitted in evidence "so extremely damaging in character that they could not have failed to improperly influence the jury." *Lonergan v. United States*, 95 F. (2d) 642, 646. A second petition to the supreme court of the United States for a writ of certioriari was denied. 304 U. S. 581, 82 L. Ed. 1543, 58 S. Ct. 1061.

Shortly after the final disposition of the matter by the supreme court of the United States, Mr. Lonergan filed his resignation as a member of the bar, and it was accepted by this court. In his first petition for reinstatement filed with the board of governors in July, 1941, Mr. Lonergan accounted for his resignation as follows:

"The petitioner was forced to tender his resignation in order to avoid disbarment proceedings by reason of his conviction and sentence charged with violation of the mail fraud statutes of the United States."

He no doubt had in mind the following provision of Rule XI of our Rules for Discipline of Attorneys:

"An attorney or counselor may be reprimanded, suspended or disbarred for any of the following causes:

"(1) His conviction of a felony or misdemeanor involving moral turpitude, in which case the record of conviction shall be conclusive evidence." 193 Wash. 92-a.

The petitioner began his term at the Federal penitentiary on June 17, 1938, and was paroled in December, 1939, although his sentence did not expire until June 16, 1941. His first petition for reinstatement was filed with the board of governors less than a month thereafter, to be exact on July 14, 1941, and the recommendation of the board approving the petition was filed in this court before the end of that year. Attached to the recommendation were some twenty letters, addressed to the board, all certifying to the confidence of their authors in Mr. Lonergan's character, and a number of them, in his innocence of the charge of which he had been convicted. Of these letters, five were written by judges of the superior court in and for King county before whom the petitioner had practiced for many years, and the remainder by leading and prominent members of the Seattle bar. Doubtless, these letters greatly influenced the board in recommending Mr. Lonergan's reinstatement, although it did not so state. It did, however, say:

"The board of governors, by resolution, adopted the report of its investigator as setting out in more detail its reasons for the approval of said petition and recommendation of the said reinstatement."

This report was attached as the first exhibit to the recommendation. It consisted of a single page, reciting the background of the case, and stated the following reasons for its conclusions:

"The transactions appeared in exact conformity to what is done every day in other commodity markets. Government authorities appear to have been put out because private citizens should be invited to speculate in silver at a time when the administration was trying to rush through legislation to take over the silver supply. Lonergan was made the goat. . . . I have read (450 pages) the record of appeal including an abstract of testimony and believe that Lonergan was promptly and politely railroaded by a procedure which would shame the officers of a kangaroo court in the city jail."

Manifestly, this court could not reinstate the petitioner, by a decision and opinion based upon the above reasons, without directly violating every rule relating to

the sanctity and finality of judgments, as well as every canon of judicial comity, courtesy, and respect. Baldly stated, the petitioner requested this court to review the decision of the Federal courts, or, rather, to accept the result of a review made by the investigator for the board of governors and declare those decisions erroneous; for how otherwise could we reinstate the petitioner on the ground of innocence? When one who has been disbarred on account of having been convicted of a crime applies for reinstatement, whatever opinions members of the court may hold as individuals as to his guilt or innocence is entirely irrelevant. In exercising their judicial functions, they must treat his guilt as an established fact. Many decisions could be cited to this effect, but we think that of *In re Finch,* 156 Wash. 609, 287 Pac. 677, is all that is necessary.

The first petition was denied for another sound reason. It was prematurely filed. It is universally held that one who has been disbarred—and one who has resigned in order to forestall disbarment is in the same position—should not be reinstated until sufficient time has elapsed to enable him to actually demonstrate, by conduct, that he is, in fact, worthy of trust and confidence. In effect, he is expected, and required, to establish a new reputation.

A petition for reinstatement is literally a request for the entry of a judgment certifying to the public that the petitioner is worthy of trust and confidence. The judges who are called upon to pass upon such a petition are therefore confronted with a grave responsibility and are interested, above all else, in the answers to such pertinent questions as these: What has been the petitioner's personal conduct and mode of life since retirement from the bar? Has he in the meantime conducted whatever activity he has engaged in with honesty and fairness? Are his clients, customers, or employers, as the case may be, willing to certify to his honesty, and that he is worthy of trust and confidence? No showing of this kind was made or attempted in support of the first petition.

The reason for that omission is plain. Under the circumstances, it would have been impossible to make such

a showing. When he filed his resignation from the bar on October 3, 1938, the petitioner had already begun his term in prison. He was paroled on December 3, 1939, and remained a parolee until his sentence expired on June 16, 1941. He filed his first petition for reinstatement on July 14, 1941. Hence, during the period which elapsed between his resignation and the filing of his first petition for reinstatement, he was, as to his conduct, under Federal regulation and compulsion for a period of two years and nine months, and a free agent with respect thereto but twenty-eight days. That is too short a time in which to establish a provable reputation of being worthy of trust and confidence. The first petition was premature, unseemly so.

Mr. Lonergan's second petition for reinstatement was filed in March, 1943. In this instance, petitioner was, to some extent, still seeking reinstatement via exoneration, as is shown by the following quotation from the petition:

"Petitioner offers and herewith tenders to the Board the printed transcript of the evidence on appeal, and requests the opportunity to file the same herein should it be considered pertinent to this petition. Petitioner further offers and desires to incorporate as a part hereof, by reference thereto, his petition for reinstatement filed with the Board in July, 1941 and the report of the Special Committee of the Board made in connection therewith."

Some months later, but before the board of governors had acted upon his petition, he filed his affidavit stating that "he has been employed or unemployed as follows":

"June - August, 1941, unemployed in Seattle, Washington.

"August, 1941 - June, 1942, employed in Los Angeles, California, as office manager of Morrison Bond Co., a street bond and security investment company in process of liquidation in bankruptcy.

"July, 1942 - February, 1943, unemployed in Seattle, except for month of November, when employed at rough carpenter work for Prefabricated Products Co.

"March, 1943 to date employed as assistant office manager in charge of cost and production control planning of Wilhite Machine Works, a machine shop, Los Angeles, Cali-

fornia. It is my intention to stay so employed with this firm until I can return to Seattle to practice law."

The board recommended reinstatement on September 15, 1943, and, in due course, the record upon which it acted was transmitted to this court. It contained no showing of any investigation at Los Angeles in order to secure light upon those questions which, we have hereinabove pointed out, are of first importance in determining whether or not reinstatement should be permitted. The affidavit, quoted above, merely established that the petitioner had been employed, and where he had been employed, and the length of time of such employment. Some inference that his conduct was satisfactory might be drawn from the fact that each of the Los Angeles employments covered a considerable period, but the essential evidence was wholly lacking. That evidence should have been furnished by the petitioner. The court did not choose to shoulder the burden of instituting an inquiry as to the particulars of his conduct in Los Angeles, and, accordingly, his second petition was necessarily denied.

The third petition with which we are now directly concerned was filed in January, 1945. After due notice of hearing, the board of governors unanimously recommended the reinstatement of Mr. Lonergan, and the recommendation, together with supporting documents, in due course came on before the court. In this instance, in addition to a great number of letters from lawyers and judges, the file included firsthand evidence satisfactorily establishing such facts as the following: That, in his employment as assistant to the trustee in bankruptcy of the Morrison Bond Company at Los Angeles, the petitioner was responsible for, and personally handled, many thousands of dollars in negotiable securities and cash. The trustee certified as to Mr. Lonergan:

"His responsibility was fully, accurately carried out in every detail. I required no personal bond from him. My trust and confidence was fully justified and substantiated."

As to his employment by the Wilhite Machine Works of

Los Angeles, Mr. Wilhite certified, as of January 20, 1945, as follows:

"Mr. Lonergan has been in our employ since February, 1943, chiefly occupied as office manager in charge of administrative matters. We have found him to be a valuable aid in the conduct of the business, intelligent, industrious and conscientious. It has been the opportunity of myself and family to meet frequently at their home with Mr. and Mrs. Lonergan who live together in the City of Glendale, and to have them visit my home. From these and other sources of information I know Mr. Lonergan and his wife have been living a quiet, respectable life and that both in business and outside of business he has at all times in recent years been a law abiding and respectable gentleman. . . . I have no hesitancy in recommending him for any position of honor or trust."

In justice to petitioner, there is another matter which should be mentioned. Our rules regulating reinstatement procedure provide that, when a petition for reinstatement has been filed with the board of governors,

"Notice of the hearing shall also be published at least once in the 'Washington Law Review and State Bar Journal,' or such other periodical as the board may direct. Such published notice shall contain a statement that a petition for reinstatement has been filed, the date and grounds for the disbarment or resignation and the time fixed for the hearing of the petition for reinstatement." 193 Wash. 108-a.

The purpose of the notice is to give opportunity for the presentation of objections to the petitioner's reinstatement, a privilege that is frequently exercised by lawyers and by members of the public. Notice of hearing of Mr. Lonergan's petition for reinstatement was published in 1941, again in 1943, and a third time in January of this year, all in the Washington Law Review and State Bar Journal, a publication which is mailed to every lawyer in the state. The board of governors has certified that on none of these three occasions has anyone appeared to object to Mr. Lonergan's reinstatement or filed any written objection to the granting thereof. This fact has, to some extent, influenced the majority of the court in arriving at the conclusion that the petition now before us should be granted.

Upon the petitioner's taking and subscribing to the oath required and prescribed by Rem. Rev. Stat., § 139-12, and Rule VI, Rules for Admission to Practice, 193 Wash. 72-a, the clerk of this court will restore the petitioner's name to the list of attorneys duly licensed and qualified to practice law in the courts of the state of Washington.

BEALS, C. J., MILLARD, STEINERT, BLAKE, SIMPSON, MALLERY, and GRADY, JJ., concur.

JEFFERS, J., dissents.