[No. C. D. 1615.   En Banc.   February 27, 1964.]

*In the Matter of the Petition of* ARMY SEIJAS *for Reinstatement as a Member of the Washington State Bar Association.*\*

*Reported in 389 P. (2d) 652.

*Jeremiah M. Long,* for Board of Governors.

*Wayne Booth* (of *Wright, Booth, Beresford & Anderson*) and *Clay Nixon,* for petitioner.

HAMILTON, J.—The petitioner seeks reinstatement as a member of the Washington State Bar Association.

On June 26, 1931, petitioner was admitted to and commenced the practice of law in the state of Washington. In 1940, he entered into a partnership arrangement with a layman, consisting of the acquisition, management, and operation of pinball devices, principally in and about the area of Kitsap County. The business relationship between the two men continued, in one form or another, during the war years and until 1953, at which time both were indicted upon 14 counts of alleged violation of the Internal Revenue Code § 145b (26 U.S.C. § 145(b)), and one count of conspiracy as defined in 18 U.S.C. § 371. All charges arose out of and in connection with income derived from the aforementioned business venture, chiefly during the years 1942 to 1948.

Petitioner was convicted upon five counts of the indictment charging violations of 26 U.S.C. § 145(b). On July 29, 1955, he was sentenced to a maximum term of 5 years imprisonment and $2,000 fine upon each count, the terms of imprisonment to run concurrently. Subsequently, he entered a plea of guilty to the conspiracy count and was sentenced to a term of 1 year imprisonment to run concurrently with the 5-year term. In December, 1955, petitioner commenced serving his penal term, thereafter paid his fine, and was released on parole November 8, 1957. On December 12, 1957, petitioner was disbarred. *In re Seijas,* 52 Wn. (2d) 1, 318 P. (2d) 961.

Petitioner was released from parole supervision on December 26, 1960, and, on December 30, 1960, filed his petition for reinstatement. The petition, in substance, asserted that prior to his criminal conviction and disbarment his record and reputation as an attorney were excellent; that since conviction he has served his time, paid his fine, made good all tax deficiencies, refrained from the practice of law, been otherwise honorably self-employed, and is emotionally, morally, and ethically rehabilitated.

The petition, including supporting affidavits and letters from business associates and friends, was referred to the Local Administrative Committee of the King County Bar Association for investigation and report. The committee, in its report, noted that, contrary to petitioner's assertion in his petition, his record as an attorney, prior to disbarment, disclosed several complaints to the Bar Association relating to his professional conduct and a formal reprimand by the Board of Governors in 1939 involving solicitation of legal business. The committee further stated that six of its members felt reinstatement would occasion adverse public reaction and three felt it would not. The committee concluded its report as follows:

"6. Generally, having in mind petitioner's conviction and earlier record of complaints against him to the Bar Association, the important issue posed by this petition is whether the petitioner's ethical and moral standards have changed or improved to a point where they meet the moral and ethical standards required for admission to practice. The burden is on the petitioner to establish that they have so changed or improved. It is felt that this is a difficult and abstract issue which can only be determined on a formal hearing before those who have to make an authoritative conclusion and where the petitioner is apprised of the issue and given an opportunity to present character and other witnesses who can be cross-examined.

"The Committee feels that the evidence and information it has been able to assemble indicates that there has been some change for the better in the petitioner's moral and ethical standards. The Committee does not feel warranted in expressing a final opinion on the issue of whether or not petitioner should be reinstated as such can only be determined by the Board upon formal hearing . . ."

Two formal hearings before the Board of Governors of the Washington State Bar Association ensued, at which only the petitioner testified. Petitioner's testimony was supplemented by letters of recommendation from various members of the profession. At the conclusion of the hearings, the Board of Governors unanimously adopted the following finding of fact and recommendation:

"That the applicant failed to affirmatively prove or show to the satisfaction of the Board of Governors that he possesses the moral qualifications required for admission to practice law in the State of Washington, and likewise failed to prove or show to the satisfaction of the Board of Governors that his reinstatement as a member of the bar of this state would not be detrimental to the integrity and standing of the bar and the administration of justice or be subversive of, or contrary to, the public interest." Finding of Fact No. 3.

"RECOMMENDATION

"It is the recommendation of the Board of Governors of the Washington State Bar Association that the petitioner's application for reinstatement be denied."

Upon the record so made, the petition comes to this court for consideration and review.

In reviewing the petition, we do so in the light of the following principles:

(1) The burden is upon the applicant seeking reinstatement to affirmatively show that he possesses the qualifications and meets the requirements set forth in Rule for Admission to Practice 3B, excepting subsections 7, 8, and 9 thereof, and that his reinstatement will not be detrimental to the integrity and standing of the Bar and the administration of justice, or be contrary to the public interest. Rule for Discipline of Attorneys 10E.

(2) In determining the present fitness of the applicant for reinstatement, the Board of Governors and this court must take into consideration, among other factors, (a) the applicant's character, standing, and professional reputation in the community in which he resided and practiced prior to disbarment; (b) the ethical standards which he observed in the practice of law; (c) the nature and character of the

charge for which he was disbarred; (d) the sufficiency of the punishment undergone in connection therewith, and the making or failure to make restitution where required; (e) his attitude, conduct, and reformation subsequent to disbarment; (f) the time that has elapsed since disbarment; (g) his current proficiency in the law; and (h) the sincerity, frankness, and truthfulness of the applicant in presenting and discussing the factors relating to his disbarment and reinstatement. *In re Bruener,* 178 Wash. 165, 34 P. (2d) 437; *In re Lonergan,* 23 Wn. (2d) 767, 162 P. (2d) 289; *In re Durham,* 59 Wn. (2d) 185, 367 P. (2d) 126, 70 A.L.R. (2d) 268.

(3) It is the duty of the Board of Governors and this court, in cases of reinstatement, to act in the best interests of the public and with justice to the profession as well as to the applicant. Any feelings of sympathy or prejudice for or against the applicant must be laid aside.

(4) Considerable, though not conclusive, weight will be attached to the findings of the Board of Governors.

In his appearance before the Board of Governors and before this court, the main thrust of petitioner's request for reinstatement is predicated upon the assertion that he has paid his debt to society, made full restitution, and has reformed and conducted himself in an exemplary manner.

On the other hand, it is urged in support of the finding and recommendation of the Board of Governors that the record demonstrates the petitioner did not frankly, objectively, and unequivocally present and discuss certain matters pertaining to his professional and individual conduct prior to disbarment. Attention, in this regard, is drawn to the former complaints and disciplinary action by the Bar Association, to certain alleged payments to a public official in the course of petitioner's pinball operations, to a facet of petitioner's testimony in the trial of his business partner impugning the integrity of a stipulation he executed in the course of his own trial, and to the moral implications inherent in deliberate tax evasion during periods of national crisis.

We have carefully reviewed the record presented to us against the backdrop of the respective contentions advanced and the principles heretofore enunciated. In doing so, we are keenly aware that to draw the line, in any case, between sincere and abiding rehabilitation and an imposing facade thereof presents a most difficult problem from the standpoint of either the applicant's proof or the governing body's conclusion. We undertake no precise delineation or characterization in the instant case.

The petitioner has presented an impressive array of recommendatory letters from responsible and reputable business associates and members of the legal profession indicative of his successful return to family, social, and business life. We do not wish to belittle or discourage his continued success in this respect. The testimony of the petitioner, however, given, sometimes first in denial then in explanation, relative to his prior professional and business difficulties is not as reassuring. Evasions, inconsistencies, and uncertainties, not entirely explainable by lapse of time, appear in sufficient degree to reflect upon his forthrightness and cast doubt upon his objectivity toward the high standards and responsibilities demanded of a member of the legal profession. In this respect it cannot be freely said that petitioner has carried his burden of proof.

We, accordingly, concur in the finding and recommendation of the Board of Governors. The petition is denied.

OTT, C. J., HILL, DONWORTH, FINLEY, ROSELLINI, HUNTER, and HALE, JJ., and MURRAY, J. Pro. Tem., concur.