[No. C.D. 4026.    En Banc.    June 1, 1967.]

*In the Matter of the Petition of* WILLIAM HARRY SIMMONS
*for Reinstatement as a Member of the Washington
State Bar Association.**

*Jeremiah M. Long,* for Board of Governors.

*Wm. H. Simmons,* pro se.

ROSELLINI, J.—The petitioner was admitted to the practice of law in this state on September 10, 1952. On October 22, 1964, he was disbarred for violation of his oath as an attorney and conduct demonstrating his unfitness to practice law. This conduct is summarized in *In re Simmons,* 65 Wn.2d 88, 395 P.2d 1013 (1964). The particular conduct for which he was disbarred was the making of defiant, derogatory, inflammatory statements, "wholly unbecoming the dignity of any responsible member of the legal profession," such statements having been made by him while he purported to act as a municipal court judge, and which statements and accompanying notoriety cast scorn and dishonor upon the judicial process, the courts, and the legal profes-

*Reported in 428 P.2d 582.

sion. Since this conduct of the petitioner was deemed sufficient to warrant disbarment, this court did not consider other alleged misconduct which would have constituted an independent ground for such disciplinary action. See the dissent in *In re Simmons, supra.*

This petition for reinstatement was filed February 4, 1966, 15 months after the petitioner's disbarment, and 5 years after the events which gave rise to the disciplinary proceeding. It was accompanied by affidavits of men associated with the petitioner in his church, and neighbors of the petitioner, attesting to his good character. Later, an affidavit of a former employer was filed, which asserted the affiant's belief in the good character of the petitioner and his belief that the public would accept his reinstatement. The affiant also alleged that he was confident there would be no repetition of the type of conduct which occasioned the disbarment.

In addition, the petitioner submitted requests for his reinstatement signed by 600 King County lawyers, including the prosecuting attorney and the superior court judge of whom the petitioner had spoken in a contemptuous manner at the time of the events in 1961. These signatures had been solicited by the petitioner personally.

An ad hoc committee was appointed to inquire into the merits of the petition. The petitioner appeared before the committee without counsel, made a statement in behalf of his application, and answered the questions of the examiners. No other witnesses appeared. The committee reported that, in the opinion of its members, the petitioner had made appreciable progress towards personal rehabilitation, but that such rehabilitation was not fully established, and that reinstatement at that time would be detrimental to the integrity and standing of the bar and the administration of justice.

Thereafter, on July 29, 1966, a hearing was held by the Board of Governors. The petitioner again appeared, without counsel, made a statement, and answered questions. Although the petitioner had been told that he might present

witnesses in his behalf, he elected not to do so. The Board of Governors, after due consideration, adopted the recommendation of the ad hoc committee, stating:

The petitioner failed to affirmatively prove or show to the satisfaction of the Board of Governors that he possesses the moral qualifications required for admission to practice law in the State of Washington, and likewise failed to prove or show to the satisfaction of the Board of Governors that his reinstatement as a member of the Bar of this State would not be detrimental to the integrity and standing of the Bar and the administration of justice or be subversive of, or contrary to, the public interest.

The petition is now before this court for consideration and review.

The applicable principles are set forth in *In re Seijas*, 63 Wn.2d 865, 389 P.2d 652 (1964), as follows:

(1) The burden is upon the applicant seeking reinstatement to affirmatively show that he possesses the qualifications and meets the requirements set forth in Rule for Admission to Practice 3B, excepting subsections 7, 8, and 9 thereof, and that his reinstatement will not be detrimental to the integrity and standing of the Bar and the administration of justice, or be contrary to the public interest. Rule for Discipline of Attorneys 10E.

(2) In determining the present fitness of the applicant for reinstatement, the Board of Governors and this court must take into consideration, among other factors, (a) the applicant's character, standing, and professional reputation in the community in which he resided and practiced prior to disbarment; (b) the ethical standards which he observed in the practice of law; (c) the nature and character of the charge for which he was disbarred; (d) the sufficiency of the punishment undergone in connection therewith, and the making or failure to make restitution where required; (e) his attitude, conduct, and reformation subsequent to disbarment; (f) the time that has elapsed since disbarment; (g) his current proficiency in the law; and (h) the sincerity, frankness, and truthfulness of the applicant in presenting and discussing the factors relating to his disbarment and reinstatement. *In re Bruener*, 178 Wash. 165, 34 P. (2d) 437; *In re Lonergan*, 23 Wn. (2d) 767, 162 P. (2d) 289; *In re Durham*, 59 Wn. (2d) 185, 367 P. (2d) 126, 70 A.L.R. (2d) 268.

(3) It is the duty of the Board of Governors and this court, in cases of reinstatement, to act in the best interests of the public and with justice to the profession as well as to the applicant. Any feelings of sympathy or prejudice for or against the applicant must be laid aside.

(4) Considerable, though not conclusive, weight will be attached to the findings of the Board of Governors.

The petitioner maintains that he did all that could be done to show that he has overcome the weaknesses which produced his earlier misconduct and has acquired a new moral character, and that there was nothing before the board which would support any finding but that his good moral character had been established.

The factors to be considered by the board in determining the present fitness of the petitioner are contained in paragraph (2) of the quotation from *In re Seijas, supra.* In regard to factors (a) and (b), above, the only evidence offered was the petitioner's statement that he has never been accused of any dishonesty in his practice of the law. It was also known that he was elected municipal court judge. The board did not express any doubt about the petitioner in this regard, so we may assume that, prior to the events of 1961, the reputation of the petitioner was good.

In regard to factor (c), an examination of this court's opinion in *In re Simmons, supra,* will show that the petitioner's conduct, when purportedly acting as a judge of the municipal court, reflected a serious disregard for the reputation of the judicial system and a disrespect for its integrity. As the petitioner points out, he has a right as a member of a free society to express his views; however, as a representative of the legal profession, a lawyer has a duty not to express those views irresponsibly and in a manner which will bring discredit upon the profession and the courts.

Regarding factor (e), the petitioner maintains that he is now fully aware of and accepts this duty and regrets his prior action. The board, however, was not fully convinced of this reformation.

There is, in the statement of the petitioner before the board, a tenor which leaves the impression that his new attitude is based upon a conclusion that it is wise to accept such duties, because the consequences of failing to accept them may be painful, rather than a belief in the wisdom and justice of the rules imposing those duties.

There is also, in a piece of evidence of character reformation offered by the petitioner, a newspaper article appearing on the front page of the Seattle Post-Intelligencer of February 25, 1965, no indication that, as of that date, the petitioner's attitude towards the courts had softened. On the contrary, he expressed to the reporter his conviction that if the Supreme Court of the United States should consent to review his disbarment, that disbarment would be set aside, on the grounds that he had been denied procedural safeguards and his right of free speech. If his attitude concerning the propriety of his conduct had changed as of that date, the interview with the reporter presented an excellent opportunity for him to correct the impression which he had given the public in his earlier statements, an impression that he lacked respect for the courts of this state. Instead, he took advantage of the occasion to reaffirm his belief in the rightness of his position and assert that he should not have been disciplined.

The board was therefore justified in doubting that the petitioner's attitude had changed by February 25, 1965. Also, he offered no evidence that he had said or done anything to correct the impression given to the public in 1961, that he viewed the courts with contempt. The board was further justified in concluding that an insufficient time had elapsed since the disbarment [factor (f)] in which to demonstrate the petitioner's alleged change of attitude.

The board's decision was not based on any finding that the punishment was insufficient [factor (d)] or that the petitioner is not proficient in the law [factor (g)]. As to factor (h), the matters discussed in regard to the evidence of a changed attitude, above, are pertinent here. It is not that the impression is left that the petitioner was deliberately

insincere, or less than frank, but that the evidence presented by him falls short of a positive showing that he truly recognized the disservice which his conduct did to the legal profession, of which he again seeks to become a member, or that he has tried to make amends.

Since the petitioner has never manifested to the public his allegedly-changed attitude toward the law and the courts, it is not surprising that the board should have been concerned that his reinstatement at this time might have a detrimental effect on the integrity and standing of the bar and the administration of justice.

The burden is upon the petitioner to show that he is qualified for reinstatement and that his reinstatement will not be detrimental to the bar, the courts, and the interests of the public. We approve the finding of the ad hoc committee and the Board of Governors that the petitioner has failed to sustain that burden at this time.

The petition is denied.

FINLEY, C. J., HILL, DONWORTH, WEAVER, HUNTER, HAMILTON, and HALE, JJ., concur.