[No. C.D. 2504.     En Banc.     October 9, 1969.]

*In the Matter of the Petition of* WILLIAM R. EDDLEMAN *for Reinstatement as a Member of the Washington State Bar Association.**

*Reported in 459 P.2d 387; 461 P.2d 9.

*Jeremiah M. Long,* for Board of Governors.

*Alfred J. Schweppe,* for petitioner.

PER CURIAM.—William R. Eddleman seeks reinstatement of his right to practice law in the state of Washington. He was disbarred by this court on February 13, 1964. *In re Eddleman,* 63 Wn.2d 775, 389 P.2d 296 (1964). A detailed review of the transgressions which culminated in disbarment are fully discussed in *Eddleman.* The misconduct was serious. The explanations and defenses given by petitioner in those proceedings were evasive and supertechnical. The nature of the petitioner's prior action which resulted in disbarment and his defenses thereto evidenced a cavalier attitude toward the spirit of the canons of ethics and principles of fair and honest dealing. This is important to us now because a major consideration in reinstatement proceedings is whether the petitioner has affirmatively shown that he has overcome those weaknesses that produced his earlier misconduct.

■ We consider Mr. Eddleman's petition in light of certain recognized general principles: First, our concern in these matters is for the interest of the public and justice to the legal profession, as well as fairness to the applicant. Second, the burden is upon the applicant seeking reinstatement to affirmatively show that he possesses the qualifications and meets the relevant requirements for admission to the practice of law, and that his reinstatement will not be detrimental to either the integrity and standing of the bar, the administration of justice, or the public interest. The burden is properly a heavy one. Having been found unfit to hold the public trust that is placed in attorneys, it is incumbent upon the petitioner to clearly demonstrate that he has become worthy of that trust. If doubt remains, fairness to the public and the bar requires that reinstatement be denied. Third, the findings and recommendation of the Board of Governors, though advisory only and not conclusive, are entitled to considerable weight.

■ We have stated and applied these general principles in *In re Simmons,* 71 Wn.2d 316, 428 P.2d 582 (1967); *In re*

*Seijas,* 63 Wn.2d 865, 389 P.2d 652 (1964). In those cases we enumerated certain of the factors which are to be considered in assessing an applicant's present fitness for reinstatement: (a) the applicant's character, standing, and professional reputation in the community in which he resided and practiced prior to disbarment; (b) the ethical standards which he observed in the practice of law; (c) the nature and character of the charge for which he was disbarred; (d) the sufficiency of the punishment undergone in connection therewith, and the making or failure to make restitution where required; (e) his attitude, conduct, and reformation subsequent to disbarment; (f) the time that has elapsed since disbarment; (g) his current proficiency in the law; and (h) the sincerity, frankness, and truthfulness of the applicant in presenting and discussing the factors relating to his disbarment and reinstatement.

As a final premise, we note with approval the following language of the Supreme Court of California:

> There can, of course, be no absolute guarantee that petitioner will never engage in misconduct again. But if such a guarantee were required for reinstatement none could qualify. All that we can require is a showing of rehabilitation and of present moral fitness. . . . Rehabilitation is of course a "state of mind." The law looks with favor upon the regeneration of erring attorneys and should not place unnecessary burdens upon them.

*Resner v. State Bar of California,* 67 Cal. 2d 799, 811, 63 Cal. Rptr. 740 (1967).

With these considerations in mind, we turn to the record before us to determine whether petitioner has, at this time, affirmatively shown that he has overcome the weakness that produced his earlier misconduct and is fit for reinstatement to the practice of law in this state.

Petitioner's accomplishments since his disbarment are impressive. These include the completion of law courses at Columbia University and the National University of Mexico. They indicate a continuing interest in and aptitude for the study of law. Mr. Eddleman's petition is supported by numerous letters of recommendation from prominent

judges, lawyers and laymen with whom he has had personal and business contacts.

On the other hand, we have before us the recommendation of the Board of Governors that Mr. Eddleman not be reinstated at this time and its finding that Mr. Eddleman had not affirmatively shown the prerequisites for reinstatement. We are mindful of the fact that the board was in a position to observe petitioner's demeanor, whereas we are not. We also note that the board's specific findings of fact, while they sometimes appear picayune when read out of context,[1] all have direct bearing on the question of whether petitioner has overcome the weakness that produced his earlier misconduct. That weakness, again, was a cavalier attitude toward the spirit of the law, excused by reference to its technical letter. It is this same apparent attitude in the record before us that obviously prompted the Board of Governors to find that Mr. Eddleman has not satisfactorily shown his specific rehabilitation at this time.

We do not wish to belittle Mr. Eddleman's accomplishments or his general pattern of conduct since his disbarment. Indeed, we consider these laudable. However, it appears that in the main the letters of recommendation, impressive as they are, are not responsive to the principal question of whether Mr. Eddleman's attitude toward the spirit of the law and the canons of ethics has been changed and rehabilitated. The burden of proof on reinstatement rests upon the petitioner. We cannot state, in contradiction of the Board of Governors, that he has affirmatively met that burden at this time.

Accordingly, the petition is denied.

FINLEY, J. (dissenting) — The majority opinion in the case of *In re Eddleman*, 63 Wn.2d 775, 389 P.2d 296 (1964), noted that the hearing panel initially recommended reprimand and suspension from the practice of law for a period

---

[1]We are disturbed by what seems to be a requirement of the Board of Governors that applicants for reinstatement "confess" intentional misconduct. Such a requirement, if that is what the Board intends, is not proper.

of 3 years; that the Board of Governors modified this and recommended reprimand and suspension for only 1 year. However, the court, in a split decision, refused to follow either the recommendations of the hearing panel or the Board of Governors and ordered that petitioner Eddleman be disbarred from the practice of law. Along with two other members of the court sitting en banc I dissented and stated at that time "It is my view that the court, in disposing of this matter, should adopt the recommendations of the Washington State Bar Association Board of Governors, nothing more, nothing less." My views have not changed. In other words, I thought and still feel that the court was too severe in its evaluation and disposition of this matter. Furthermore, I can see no significant distinction between the instant case and the situation involved in the recent decision of this court ending the disbarment and reinstating the petitioner in the matter of *In re Seijas,* 75 Wn.2d 956, 454 P.2d 203 (1969).

Pursuant to the foregoing, I do not now, after 5 years, subscribe to the majority's present evaluation of this disciplinary matter. Human conduct is not susceptible of precise, objective, scientific measurement and prediction. Absolute predictability as to rehabilitation is not to be expected nor demanded. Reasonable and rational predictability and assurance of compliance in the future with professional standards should be the test. Instead, the Board of Governors and this court seem to me to focus backward upon petitioner's past errors in terms of absolutes and in the stern retrospect of the majority of this court in 1964. But even then three members of this court, the Board of Governors of the State Bar and the hearing panel measured and evaluated petitioner's conduct and his errors in terms of reprimand and suspension rather than disbarment. Based upon the record in this proceeding the petitioner's conduct has been exemplary, in my judgment, since that fateful day for him when this court, by a split decision, voted to void his qualifications and his license to practice law in this state.

In some totalitarian governments public confession of

error is apparently a part of a system of reeducation or "brainwashing" expected to reform or remake individuals in a required mold. I certainly agree with the majority that such a practice is not only superficial and ineffective but uncivilized and certainly not the sine qua non in connection with disciplinary proceedings regarding the practice of law.

For the reasons indicated above and, I think, consistent with my views at the outset regarding this disciplinary matter, I would grant the petition for reinstatement.

HUNTER, C. J., concurs with FINLEY, J.

December 8, 1969. Petition for rehearing denied.

