[No. C.D. 6269.   En Banc.   May 15, 1980.]

*In the Matter of the Disciplinary Proceeding
Against* EGIL KROGH, JR., *an
Attorney at Law.*

*William L. Dwyer,* for petitioner.

*Kurt M. Bulmer,* for Bar Association.

ROSELLINI, J.—After a hearing upon the petition of Egil Krogh, Jr., the Board of Governors (Board) has recommended his reinstatement. He was admitted to the practice of law in this state in 1968, and was disbarred in 1975. The opinion of this court in *In re Krogh,* 85 Wn.2d 462, 536

P.2d 578 (1975) gives his professional history and the nature and circumstances of the crime which gave rise to his disbarment. Those matters need not be detailed here. It is sufficient to say that the federal crime to which the petitioner had pleaded guilty involved his role in the burglarizing of the office of a psychiatrist. This was done in an unsuccessful effort to obtain what was hoped would be damaging evidence against one of the psychiatrist's patients, Daniel Ellsberg. The powers and resources of the office of the President of the United States, in which Krogh was employed in a position of responsibility, were used to accomplish the break-in and search of the office, all of which was done in disregard of the law and the rights of the victims.

At the time of the petitioner's disbarment, it appeared to the majority of this court that he did not fully appreciate the gravity of his breach of duty as an attorney, even though he had come to realize that his conduct was unjustified. According to the evidence presented in this proceeding, the petitioner has, since his disbarment, spent a great deal of time exploring and thinking about the ethics of that conduct. His testimony reveals that he has come to appreciate how serious was the breach of his duties as a lawyer, has tried to rectify that breach, and is determined that he shall never again be guilty of such conduct.

In *In re Johnson*, 92 Wn.2d 349, 351, 597 P.2d 113 (1979), we restated the criteria which are to be used in considering an application for reinstatement. These are:

> (a) the applicant's character, standing, and professional reputation in the community in which he resided and practiced prior to disbarment; (b) the ethical standards which he observed in the practice of law; (c) the nature and character of the charge for which he was disbarred; (d) the sufficiency of the punishment undergone in connection therewith, and the making or failure to make restitution where required; (e) his attitude, conduct, and reformation subsequent to disbarment; (f) the time that has elapsed since disbarment; (g) his current proficiency in the law; and

(h) the sincerity, frankness, and truthfulness of the applicant in presenting and discussing the factors relating to his disbarment and reinstatement.

*In re Eddleman,* 77 Wn.2d 42, 44, 459 P.2d 387, 461 P.2d 9 (1969).

The petitioner practiced law for only 3 months before he was offered employment in Washington, D.C. This was hardly enough time to establish a reputation as a lawyer. However, those who were familiar with his professional career during that brief period were impressed with his capabilities and performance. Aside from his activities as a White House "plumber", he appears to have been highly regarded as a governmental employee. His membership in that group was terminated when, to his credit, he refused to authorize a wiretap.

Since disbarment, he has been employed primarily as a teacher in public administration, where he has gained the respect of his colleagues and students.

Ethics in public administration is one of the subjects which he teaches. Unlike a number of "Watergate" figures, he has refused to exploit his experience in the Nixon administration for personal gain. He is presently pursuing a doctorate in public administration. Many letters were received by the Board attesting to his fine character, and the testimony before that body was to the same effect. We recognized his many commendable qualities in our opinion in *In re Krogh, supra.*

According to the record before us, the petitioner's public and private conduct since the time of his disbarment has inspired no criticism. With respect to the circumstances of his crime, the Board found that there were certain mitigating factors present. These center around his lack of experience as a lawyer, his position of subordination to the President, and the "frantic atmosphere" in the White House at that time. The petitioner does not now seek to justify his conduct or excuse it because of mitigating circumstances. These circumstances do, however, bear on the

question whether the weaknesses which led to the commission of the offense were correctable. Those weaknesses involved a lack of commitment to professional ethics and constitutional principles as a result of which he exhibited an uncritical susceptibility to the influence of others. These weaknesses, grounded in mental attitudes, were amenable to reformation through diligent attention, education, and effort on the petitioner's part. According to the evidence before the Board, he has accomplished that reformation.

The punishment which Mr. Krogh has undergone includes, after his plea of guilty, the serving of time in prison followed by a period of probation, the disabilities attached to his conviction,[1] the loss of his government post, 6 years of disbarment, and the mental and emotional suffering attendant upon these penalties. We concur in the Board's finding that the punishment has been sufficient. While restitution is not appropriate in the circumstances, Mr. Krogh has endeavored to rectify the wrong and, in his position of teacher of public administration, has stressed the importance of ethical conduct.

The crime for which the petitioner, now aged 40, was disbarred occurred 8 years ago. It has been 6 years since he was declared unfit to practice law. His behavior in the interim has been consistently honorable, and we concur with the Board that a sufficient length of time has passed to warrant a conclusion that he has become rehabilitated.

At the time of the petitioner's disbarment, we were not convinced that his testimony was free of equivocation. In the present proceeding, his statements appear to have been sincere, open and truthful.

The Board has also found that the petitioner possesses the qualifications and meets the requirements set forth in the Admission to Practice Rules, except for the residency requirement, which will be met before he takes the bar examination. His proficiency in the law will be established upon successful completion of that test.

---

[1] We are assured that all such disabilities have now expired.

The major consideration in reinstatement proceedings is whether the petitioner has affirmatively shown that he has overcome those weaknesses that produced his earlier misconduct. *In re Johnson, supra.* We believe the course of conduct and the mental attitudes which we have described constitute such a showing. The Board found, and we concur, that there is every reason to believe that the petitioner, if readmitted, will be a credit to the profession and will comply with the code of professional responsibility and the requirements of the law. The law looks with favor upon the reinstatement of former attorneys whose conduct and attitudes have been reformed. *In re Eddleman,* 77 Wn.2d 42, 459 P.2d 387 (1969).

It is ordered that, upon successful completion of the bar examination, the petitioner shall be readmitted to the practice of law in this state.

STAFFORD, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

UTTER, C.J. (concurring in the result)—I agree with the painstaking analysis of the Board of Governors of the State of Washington recommending reinstatement. I further agree with the majority that petitioner has met all the grounds established in *In re Johnson,* 92 Wn.2d 349, 351, 597 P.2d 113 (1979), for reinstatement. For these reasons I believe that upon successful completion of the bar examination he be admitted to the practice of law in this state.

HOROWITZ, J., concurs with UTTER, C.J.

WRIGHT, J. (dissenting)—I dissent. This application for reinstatement is the aftermath of a disbarment proceeding which is reported in *In re Krogh,* 85 Wn.2d 462, 536 P.2d 578 (1975). Less than 5 years have gone by since this petitioner was disbarred. The charges then leveled against him

were extremely serious. In a concurring opinion at that time (June 6, 1975) I said at page 489, in part:

> In this proceeding we have a respondent who seeks by various means to claim he did not know what he was doing was wrong. He claims to have been blinded by the prestige of the office of the President of the United States; he claims he thought he was justified by the needs of national security. The stark fact remains—regardless of the President, regardless of national security—he must have known *conspiracy* was wrong, he must have known *burglary* was wrong, and he must have known *perjury* was wrong. If he knew these acts were wrong and did them anyway, he is not fit to practice law. If he did not know such acts were wrong, he is not fit to practice law.

It is still true that a man who would do the things he did is not fit to practice law. I am not prepared to say that he should never again practice law, nor am I prepared to say that he should never be permitted to be reinstated. I feel that a substantially longer period of time should be allowed to elapse to let him prove that he has rehabilitated himself before he is readmitted.

The sanction of disbarment is one which is reserved for the most serious offenders among the legal profession. It is a sanction reserved for those who in the judgment of the Supreme Court are no longer fit to practice law; those who do not merit the confidence of the public; those whose continuation in the legal profession will constitute a menace to the public and a discredit to the honor of the profession. Some who have been disbarred are permitted at a later time to petition for reinstatement—many never do. Those who do petition for reinstatement must be judged upon several factors, including the degree of their rehabilitation, the seriousness of the original offense, the demonstration of his or her genuine repentance and acknowledgment that the prior acts were wrong, and other factors which may appear to the court to be relevant in each case.

510

This petitioner simply has not demonstrated that he is ready to receive reinstatement and I would deny the petition at this time. Therefore, I dissent.

BRACHTENBACH, J., concurs with WRIGHT, J.