[No. C.D. 6869. En Banc. July 9, 1987.]

*In the Matter of the Disciplinary Proceeding
Against* HUGH W. STROH, *an
Attorney at Law.*

*Torbenson, Thatcher, Yund & Blacklow,* by *Walter J. Yund, Jr.,* for petitioner.

*Robert T. Farrell,* for Bar Association.

DORE, J.—Hugh Stroh was disbarred by this court in 1982 for witness tampering. He. now petitions for reinstatement.

## FACTS

Stroh was admitted to the Washington State Bar in 1970, and had a general practice in which he handled civil and nonfelony criminal matters. In 1977, during the course of handling a driving while intoxicated defense for a client, Stroh had a discussion with the arresting police officer which resulted in the filing of a charge of witness tampering against him. The police officer reported that Stroh requested that he not testify against Stroh's client, and in the alternative that he falsify his testimony with regard to the warning he gave the client about the Breathalyzer test. The charge was initially dismissed on the grounds of unconstitutionality, but this court reversed and remanded for trial. *State v. Stroh,* 91 Wn.2d 580, 588 P.2d 1182, 8 A.L.R.4th 760 (1979).

At trial, Stroh pleaded not guilty, maintaining that his conversation with the officer was in the nature of a plea bargain, as there was no prosecuting attorney in the DWI

case with whom Stroh could have plea bargained. Nevertheless, the jury found Stroh guilty of tampering with a witness, a class C felony. He was given a deferred sentence, with the terms of his 3–year probation requiring 30 days in jail, payment of a $500 fine plus court costs, and 150 hours of community service. On July 12, 1982, after Stroh fulfilled those terms, the court granted his "Petition for Leave to Withdraw Plea of Guilty [sic] and Enter a Plea of Not Guilty" and ordered dismissal of the cause.

Concurrently with the criminal charges, Stroh was subject to disciplinary action by the Washington State Bar Association. In August 1979, upon becoming aware of the charges against Stroh, the bar association instituted disciplinary proceedings against him. The Disciplinary Review Board, however, reversed the conclusion of the hearing examiner to disbar Stroh, and dismissed the complaint. At that point Stroh withdrew his appeal of his criminal conviction. The King County Prosecutor then petitioned this court to review the Board's dismissal. This court held that the Board erred in striking the hearing examiner's findings on the issue of moral turpitude, and ordered disbarment. *In re Stroh*, 97 Wn.2d 289, 644 P.2d 1161 (1982), *cert. denied*, 459 U.S. 1202 (1983).

In May 1984, Stroh petitioned for reinstatement the first time, but the petition was dismissed as premature, as it was filed within 3 years of disbarment. The instant petition for reinstatement was filed on March 5, 1986. Special counsel appointed by the Board of Governors, Paul Luvera, made an admirably thorough investigation, and obtained the testimony of numerous witnesses. After considering oral testimony, depositions and letters, on January 9, 1987 the Board of Governors, in a 5–to–4 decision, entered an order recommending reinstatement.

Since disbarment, Stroh owned and later sold a small business, and has worked as a business broker, most currently with the Stroh Corporation, of which he is the sole shareholder.

## REINSTATEMENT

The broad goals of attorney discipline are protection of the public and the preservation of public confidence in the legal system. *E.g., In re Rentel,* 107 Wn.2d 276, 729 P.2d 615 (1986). A petitioner for reinstatement to the bar has a heavy burden of showing by clear and convincing evidence: "rehabilitation, fitness to practice [law], competence and compliance with all applicable discipline or disability orders and rules", and that reinstatement will not be detrimental to the integrity and standing of the bar, the administration of justice, or the public interest. *In re Johnson,* 92 Wn.2d 349, 350, 597 P.2d 113 (1979); *In re Eddleman,* 77 Wn.2d 42, 43, 459 P.2d 387, 461 P.2d 9 (1969); *ABA Standards for Imposing Lawyer Sanctions,* Std. 2.2 (Approved Draft, 1986). The major consideration in reinstatement proceedings is whether the disbarred attorney has shown that those weaknesses which produced the earlier misconduct have been corrected. *In re Walgren,* 104 Wn.2d 557, 561, 708 P.2d 380 (1985).

■ The recommendation of the Board of Governors to reinstate Stroh is advisory only, but it is entitled to considerable weight. *In re Eddleman,* at 43. Eight criteria are used by this court to assess whether to reinstate a disbarred attorney:

(a) the applicant's character, standing, and professional reputation in the community in which he resided and practiced prior to disbarment; (b) the ethical standards which he observed in the practice of law; (c) the nature and character of the charge for which he was disbarred; (d) the sufficiency of the punishment undergone in connection therewith, and the making or failure to make restitution where required; (e) his attitude, conduct, and reformation subsequent to disbarment; (f) the time that has elapsed since disbarment; (g) his current proficiency in the law; and (h) the sincerity, frankness, and truthfulness of the applicant in presenting and discussing the factors relating to his disbarment and reinstatement.

*In re Eddleman,* 77 Wn.2d at 44. We turn to the record to

determine if Stroh has sustained his burden of proof on each of those elements.

## A

Stroh's character, standing, and professional reputation in the community in which he resided and practiced prior to disbarment.

The letters and testimony of numerous attorneys, three judges, and several of Stroh's clients uniformly support Stroh's good character and strong reputation as an ethical attorney prior to his disbarment. Interested parties were given ample opportunity to express contrary views, but none did so. Stroh has demonstrated that, prior to the incident leading to disbarment, his character, standing, and professional reputation in the community were excellent.

## B

The ethical standards which Stroh observed in the practice of law.

With the exception of the incident leading to Stroh's conviction and disbarment, there is no record of any disciplinary proceedings or any complaints, other than fee disputes. The letters and testimony of judges and other attorneys familiar with Stroh's work generally express the belief that Stroh was an ethical attorney, although an aggressive one. Stroh has demonstrated, with the exception of the witness tampering incident, that he had high ethical standards in the practice of law prior to disbarment.

## C

The nature and character of the charge for which Stroh was disbarred.

This court held in *In re Stroh,* 97 Wn.2d at 295 that the crime of tampering with a witness strikes at the very core of the judicial system, and necessarily involves moral turpitude. "'For an attorney at law to actively procure or knowingly countenance the commission of perjury is utterly reprehensible.'" *In re Stroh,* at 295–96 (quoting *In re Allen,* 52 Cal. 2d 762, 768, 344 P.2d 609 (1959)). Further, Stroh

requested and the jury was instructed that the crime of which he was charged required proof of criminal intent. *In re Stroh,* at 296.

Stroh does not contest his conviction or the seriousness of his crime. In considering reinstatement for disbarment resulting from a criminal conviction, this court must treat guilt of the crime as an established fact. *In re Lonergan,* 23 Wn.2d 767, 771, 162 P.2d 289 (1945). Nevertheless, we do not believe that Stroh demonstrated such moral turpitude as to forever bar him from the practice of law. It appears that Stroh's initial conversation with and letter to the police officer were with the prosecuting attorney's consent and knowledge. This indicates that Stroh did not set out on a deliberate course of illegal conduct. We are also sensitive to the fact that Stroh abandoned his appeal of the conviction in reliance on the Board's dismissal of his disciplinary case at the urging of his partners to put the matter to rest.

A more crucial issue than the seriousness of the crime is whether the applicant is rehabilitated. *E.g., In re Walgren,* at 561. We agree with the Board's analysis that it is unlikely that Stroh will engage in the future in conduct such as that which led to his witness tampering conviction.

## D
### The sufficiency of the punishment and the making or failure to make restitution where required.

A goal of attorney discipline is to punish an attorney sufficiently to assure that the offense will not be repeated. *In re Krogh,* 85 Wn.2d 462, 479, 536 P.2d 578 (1975). Stroh has served 30 days in jail and 150 hours of community service with the King County Fire Protection District, and has paid a $500 fine. There was no issue of restitution in this case. The offense for which he was convicted occurred more than 10 years ago, and Stroh has testified to extreme shame and humiliation as a result of his disbarment. Stroh has been sufficiently punished for the offense leading to his disbarment.

E

Stroh's attitude, conduct, and reformation subsequent to disbarment.

The majority of the Board of Governors found "Mr. Stroh's general attitude, conduct and reformation subsequent to disbarment have been of a level and quality to support reinstatement." Finding of fact 5. Testimony of witnesses familiar with Stroh's business conduct after disbarment supports this finding. Stroh's friends assert that he was not bitter about his disbarment, despite the hardship and embarrassment it caused him. Nevertheless, the dissents to the Board of Governors' ruling point to incidents which, viewed cumulatively, might cast doubt as to Stroh's attitude, conduct and reformation.

1. Holding himself out as an attorney. Stroh was very careful not to perform the functions of an attorney after disbarment. However, his name continued to appear in the Directory of Attorneys of King County, published by the Daily Journal of Commerce, including the 1986 directory. Apparently he told his secretary to remove his attorney listing from the telephone company phone book, but he did not follow up on this matter to ensure that his name was actually removed from the directory. In addition, Stroh continued to write checks imprinted with his name and the words "Attorney at Law" after his disbarment until some time in 1984. Furthermore, Stroh displayed for some time his license to practice law in his private brokerage office, albeit on a wall not visible to visitors.

We agree with the dissents to the Board's recommendation that Stroh's conduct was improper. After disbarment, Stroh should have scrupulously avoided giving any impression that he was a licensed attorney. Nevertheless, we find that the foregoing incidents reveal carelessness rather than any conscious attempt to deceive. We find that at no time did Stroh attempt to practice law or profit from giving the impression that he was a lawyer.

2. Nondisclosure of conviction. In his applications for real estate salesperson's and broker's licenses, Stroh answered

"no" to the question, "Have you ever been convicted of a crime?" However, in his petition for reinstatement, Stroh stated that he had fully disclosed his conviction, sentence and disbarment. In support of this assertion, Stroh attached a copy of a letter he had written to the Department of Licensing on January 27, 1983. That letter not only fails to reveal the fact of conviction (calling the conviction a mere "allegation"), but also wrongly states that Stroh was "disbarred for a period of three years" because he had merely "technically violated the code of ethics". The letter further wrongly states that Stroh would be entitled to practice law after May of 1985, and that the hearing examiner had found that Stroh's conduct was within the scope of plea bargaining. In sum, the letter is characterized by understatement and innuendo, and is in fact false in several respects. Stroh testified, however, that he had orally corrected and clarified the letter, and had fully informed the Department of Licensing of his conviction and disbarment. We defer to the Board of Governors' factual determination that Stroh did in fact reveal his conviction and disbarment as he asserted in his petition for reinstatement that he did.

We note that Stroh was entitled to keep confidential the fact of his conviction to the Department of Licensing after he obtained the "Order of Dismissal" of his conviction executed by Judge James Noe on July 12, 1982. The express language of RCW 9.95.240 entitles Stroh to assert that he has never been convicted. The statute states:

Every defendant who has fulfilled the conditions of his probation for the entire period thereof, or who shall have been discharged from probation prior to the termination of the period thereof, may at any time prior to the expiration of the maximum period of punishment for the offense for which he has been convicted be permitted in the discretion of the court to withdraw his plea of guilty and enter a plea of not guilty, or if he has been convicted after a plea of not guilty, the court may in its discretion set aside the verdict of guilty; and in either case, the court may thereupon dismiss the information or indictment against such defendant, *who shall thereafter be*

*released from all penalties and disabilities resulting
from the offense or crime of which he has been con-
victed.* The probationer shall be informed of this right in
his probation papers: *Provided,* That in any subsequent
prosecution, for any other offense, such prior conviction
may be pleaded and proved, and shall have the same
effect as if probation had not been granted, or the infor-
mation or indictment dismissed.

(Italics ours.) RCW 9.95.240.

We find that the evidence supports the Board's determi-
nation that Stroh's general attitude, conduct and reforma-
tion subsequent to disbarment have been of a level and
quality to support reinstatement.

F

The time that has elapsed since disbarment.

The purpose of this criterion is to postpone reinstate-
ment until sufficient time has passed to enable the appli-
cant to demonstrate actual conduct worthy of trust and
confidence. *In re Lonergan,* 23 Wn.2d at 771. The suffi-
ciency of time determination is made by weighing the
nature of the offense against the time which has elapsed
subsequent to disbarment. *In re Walgren,* at 566. Stroh was
disbarred more than 5 years ago on May 12, 1982. The
incident leading to his disbarment occurred 10 years ago.
Giving due consideration to the seriousness of the incident
leading to disbarment, we find that Stroh has demonstrated
conduct making him worthy of reinstatement over a suffi-
cient period of time.

G

Current proficiency in the law.

Before reinstatement, Stroh will be required to pass the
bar examination, which will afford him the opportunity to
demonstrate his proficiency in law. RLD 9.7(a).

H

Stroh's sincerity, frankness, and truthfulness in pre-
senting and discussing the factors relating to his dis-
barment and reinstatement.

Stroh did not aggressively bring up the circumstance of his disbarment to each potential business associate upon first acquaintance. It appears, however, that Stroh had the habit of discussing his disbarment candidly when asked, or after a longer business relationship developed. We agree with the Board that Stroh has satisfactorily demonstrated this final criterion for reinstatement.

CONCLUSION

We agree with the Board of Governors that Stroh has met his burden on each of the elements required for reinstatement. We applaud the thoroughness of special counsel in the investigation of this matter.

Hugh Stroh is hereby reinstated subject to his passing the bar examination and fulfilling all requirements imposed by the bar association on attorneys practicing in this state.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.