[No. C.D. 984.　*En Banc.*　March 8, 1946.]

*In the Matter of the Petition of* JULIUS SHAIN *for Reinstatement as an Attorney at Law.*[1]

*Houghton, Cluck & Coughlin,* for petitioner.

*S. H. Kelleran,* for board of governors.

*H. Sylvester Garvin, Anthony Savage,* and *John F. Walthew, amici curiae.*

MALLERY, J.—The petitioner was regularly admitted to the bar of this state in 1926. He engaged in a general practice of the law in the city of Seattle until 1938.

In May of 1938, petitioner was convicted in the superior court for King county of the crime of "Tampering with a witness," a gross misdemeanor under Rem. Rev. Stat., § 2363

[1]Reported in 166 P. (2d) 843.

[P.P.C. § 118-25]. Petitioner was granted a suspended sentence. He closed his law offices forthwith and has at all times since then desisted from the practice of law. He was disbarred by an order entered January 6, 1939.

Petitioner left the state in the fall of 1938. He neither appealed his conviction nor appeared in the disbarment proceedings. Upon his return to this state in April of 1945, he filed with the state bar association the petition which is now before us for review. The board of governors having authorized the local administrative committee to investigate this matter, it returned to the board a written report of its findings, in which it recommended by a three to two vote that the petition be denied upon the ground that

". . . Julius Shain was found guilty of an act and crime that goes to the very heart of the ethics of the legal profession and that he has proven himself unworthy to practice law, and that his petition for reinstatement should be denied."

Subsequently, the petitioner and his counsel appeared before the board of governors for hearing and examination, a transcript of which has been made a part of this record. Pursuant to that hearing, the board entered the following order:

"This matter having come on for hearing before the Board of Governors of the Washington State Bar Association on the 19th day of July, 1945, the Board of Governors having before it the said application and supporting letters, and the report and recommendations of the Local Administrative Committee, and upon and after examining Mr. Shain, who was personally present, the original of the transcript upon such examination being made a part of the record, the Board, having considered the matter and being fully advised, does deny Mr. Shain's application for reinstatement and recommends to the Supreme Court denial thereof."

It is this order from which petitioner has appealed. The principles enunciated in the recent case of *In re Lonergan*, 23 Wn. (2d) 767, 162 P. (2d) 289, are controlling here. We there stated that:

"When one who has been disbarred on account of having been convicted of a crime applies for reinstatement, what-

ever opinions members of the court may hold as individuals as to his guilt or innocence is entirely irrelevant. In exercising their judicial functions, they must treat his guilt as an established fact. Many decisions could be cited to this effect, but we think that of *In re Finch*, 156 Wash. 609, 287 Pac. 677, is all that is necessary. . . . It is universally held that one who has been disbarred—and one who has resigned in order to forestall disbarment is in the same position—should not be reinstated until sufficient time has elapsed to enable him to actually demonstrate, by conduct, that he is, in fact, worthy of trust and confidence. In effect, he is expected, and required, to establish a new reputation.

"A petition for reinstatement is literally a request for the entry of a judgment certifying to the public that the petitioner is worthy of trust and confidence. The judges who are called upon to pass upon such a petition are therefore confronted with a grave responsibility and are interested, above all else, in the answers to such pertinent questions as these: What has been the petitioner's personal conduct and mode of life since retirement from the bar? Has he in the meantime conducted whatever activity he has engaged in with honesty and fairness? Are his clients, customers, or employers, as the case may be, willing to certify to his honesty, and that he is worthy of trust and confidence?"

Petitioner is forty-seven years old. Eight years have elapsed since he was convicted. He has had sufficient time in which to establish a new reputation.

In the interim, petitioner resided in but one community, Brooklyn, New York. There he was first engaged in the sale of linens which he purchased from wholesalers, one of whom has reported to the local administrative committee that he extended petitioner a small line of credit on short terms, and that petitioner's dealings were satisfactory. When the war broke out, petitioner entered a defense industry, ultimately becoming a journeyman machinist. According to his employers, Revere Silversmiths, Inc., of Brooklyn, he was "quite satisfactory and a good worker." Petitioner is currently employed in Seattle as a machinist. The report of the local administrative committee states that petitioner has "saved money and invested in war bonds" and furthermore: "The committee feels that Shain, since

his disbarment, has lived an industrious and honest life."

Many letters filed in his behalf by members of the Seattle bench and bar are expressive of the present good character of the petitioner. No letters expressing a contrary view have been brought to our attention.

While petitioner has at all times since his disbarment abstained from practice, he has spent much of his spare time in the public law library in an endeavor to keep abreast of the law.

A review of the entire record leads us to the conclusion that the petitioner has proven himself regenerated. He has established a new reputation. His personal conduct and mode of life since disbarment have been unimpeachable. He can do no more.

While the board of governors specified no particular ground for denying the petition, we suspect that it was influenced to some degree by the statement of the majority of the local administrative committee to the effect that the crime, of which petitioner had been convicted, "goes to the very heart of the ethics of the profession." This is granted. The true test is whether or not petitioner has satisfied us of his regeneration. We quote from *In re Andreani,* 14 Cal. (2d) 736, 97 P. (2d) 456:

"In the case of *In re Nisbet,* 77 Cal. App. 260, 261 [246 Pac. 120], it also was said: It is not the policy of the law, and is not considered to be in the interest of justice, that an attorney who has been disbarred for misconduct shall never under any circumstances be readmitted to practice.' And in the case entitled *In re Stevens,* 197 Cal. 408, 424 [241 Pac. 88], this court declared that 'The law is interested in the regeneration of erring attorneys, and in the enforcement of a sound discipline its disposition ought not to be to place unnecessary burdens upon them.' The 'door of hope' should no more be conclusively or finally shut as to them than it should be thus closed as against any other person who has erred and consequently may have suffered a somewhat similar penalty through the disciplinary functioning of the law. Reformation and regeneration are open to any man and, when effected, should merit a just reward. Although it has been declared that disbarment is not adjudged as a punishment, but is a method judicially devised to insure

protection to the public,—it is clear that when reformation of a disbarred member has been effected the public is no longer in need of such protection. Reformation may only be brought about by the individual. It may be manifested solely by a 'state of mind' which may not be disclosed by any certain or unmistakable outward sign. Its existence may be difficult to establish affirmatively, but its nonexistence may be 'proved' by a single act. Although 'rehabilitation' is the word commonly employed by lawyers and the courts to designate the desired 'change of heart', or reformation, of a disbarred attorney,—in reality, rehabilitation is only that status which must immediately result, not from any words, acts or creditable conduct of such attorney, but rather from that which flows from an order or judgment of the court by which such attorney is restored to his former good standing and reinvested with the powers and dignities with which theretofore he had been authoritatively clothed."

Upon the petitioner's taking and subscribing to the oath required and prescribed by Rem. Rev. Stat., § 139-12 [P.P.C. § 273-39], and Rule VI, Rules for Admission to Practice, 193 Wash. 72-a, the clerk of this court will restore the petitioner's name to the list of attorneys duly licensed and qualified to practice law in the courts of the state of Washington.

DRIVER, C. J., STEINERT, BLAKE, and BEALS, JJ., concur.

MILLARD, J. (dissenting)—I concur in the view of the board of governors of the state bar association.

SIMPSON, JEFFERS, and ROBINSON, JJ., concur with MILLARD, J.