[No. C.D. 3983.   En Banc.   June 2, 1983.]

*In the Matter of the Disciplinary Proceeding Against* ALLEN A. BOWDEN, *an Attorney at Law.*

*Earl E. Yates,* for petitioner.

*Robert T. Farrell,* for Bar Association.

PEARSON, J.—Allen A. Bowden seeks reinstatement to the practice of law in Washington.

Mr. Bowden was disbarred in 1975 after pleading guilty to grand larceny, on charges arising from a fraudulent land sale scheme. After a hearing on his petition for reinstatement, the Board of Governors recommended, pursuant to DRA 8.6(a), by a 6-to-3 vote, that Mr. Bowden be reinstated. For the reasons set forth below, we grant Mr. Bowden's petition for reinstatement, subject to two conditions.

Allen A. Bowden was born on December 25, 1925, and is now 57 years old. Following his graduation from the University of Washington School of Law in 1952, Mr. Bowden was admitted to the practice of law in this state in December of 1952. From 1953 to 1957, Mr. Bowden was employed by the United States Attorney General in Washington, D.C., as a special assistant in the tax division. In October of 1957 he returned to Seattle, and for the next 12 years maintained a successful law practice, specializing in corporate and tax law.

In 1969, Mr. Bowden reduced his law practice and entered into a successful land development project on Hood Canal near Belfair State Park, known as Lynch Cove. In 1971, after completion of the Lynch Cove development, Mr. Bowden purchased some 500 acres adjacent to the first development and began a project to be known as Beard's Cove. It was during the developmental phase of the Beard's Cove project that Mr. Bowden engaged in the conduct that resulted in his disbarment in 1975.

Mr. Bowden, as president of his land development company, promoted and sold approximately 100 recreational lots in this development for prices ranging from $2,500 to $6,000 each. During the same period, he sold the vendor's interest in the real estate contracts to investors for cash. Shortly thereafter, he sold the same real estate contracts to other investors for cash and participated in the creation of bogus real estate contracts which were likewise sold to investors. Mr. Bowden also forged, falsely notarized, and falsely prepared warranty and quitclaim deeds, real estate contracts, assignments of real estate contracts, partial releases of mortgages, and other false title documents that were recorded in the real estate records of Mason County.

In November of 1974, Mr. Bowden was charged with five counts of grand larceny in King County Superior Court. The charges arose from the fraudulent land sale contract scheme. On December 26, 1974, Mr. Bowden entered a plea of guilty to count 3 of the information, and the remaining counts were then dismissed. He was then placed on probation, receiving a 10–year deferred sentence conditioned on the following requirements: (1) that he be placed under the charge of a probation and parole officer; (2) that he serve a term of 1 year in King County Jail, with work release privileges, if eligible; (3) that he pay all court costs by March 5, 1975; (4) that he perform 400 hours of community service as approved by the court; and (5) that he make full restitution in an amount and manner to be determined by the court. The restitution was to be paid initially to all victims whose losses were not covered by title insurance, bond, or otherwise, and the fund for such restitution was to come from payments made by Mr. Bowden at the rate of $500 per month commencing immediately after sentencing.

Mr. Bowden was assigned to a probation officer according to the first condition. As to condition 2, Mr. Bowden served 6 months in King County Jail, whereupon the balance of the 1–year sentence was suspended by the sentencing judge. Condition 3 was met within the time allotted for payment of court costs. Condition 4 was met by Mr. Bowden when

he performed work for the congressionally created 13th Regional Corporation for Alaska Natives. As to condition 5, regarding restitution to those injured by his fraudulent conduct, Mr. Bowden is still in the process of making good those debts.

The restitution claimants referred to in the sentencing judge's conditions of probation were divided into three categories according to the nature of their claims. Priority 1 claimants were those who suffered direct losses as a result of Mr. Bowden's conduct, and who were not compensated from any other source. These losses resulted either from the failure to receive title to recreational property or from receiving the vendor's interest in duplicate or forged assignments of real estate contracts. Initially, the claims of this group amounted to a total in excess of $66,000. As of July 1982, these claims had been reduced to $4,429.36, which is to be paid to the six remaining claimants in three equal installments commencing February 1, 1983. Sufficient funds now exist in the court registry to retire this debt.

Priority 2 claimants were those who purchased the vendor's interest in real estate contracts involving real estate with clouded titles. These claims, initially totaling approximately $93,000, have all been satisfied. In addition, priority 3 claimants, who had potential claims of $41,000, have likewise had their claims satisfied by receiving the full benefit of their bargains.

Shortly after these charges were filed and Mr. Bowden pleaded guilty, he stipulated to his own disbarment by this court. Mr. Bowden was in fact disbarred by order of this court on March 4, 1975.

At approximately the same time as these proceedings, Mr. Bowden filed for bankruptcy. Listed among his dischargeable debts was a debt of some $250,000 to Transamerica Title Insurance Company which had paid several claims arising from Mr. Bowden's fraudulent conduct. Mr. Bowden and Transamerica Title Insurance Company reached an agreement to settle Transamerica's claim for $50,000, to be paid at the rate of $250 per month. Approxi-

mately $40,000 of this voluntary restitution remains unpaid.

Because of his dedicated compliance with the conditions of his criminal probation, including his nearly completed plan for restitution, Mr. Bowden was permitted to withdraw his 1974 guilty plea with the approval of the King County Prosecutor's Office. The charges were then dismissed.

On December 18, 1982, a hearing was held before the Board of Governors of the Washington State Bar Association. The Board of Governors entered a finding that Allen A. Bowden possesses the qualifications and meets the requirements for reinstatement to the practice of law in this state, and found that his reinstatement would not be detrimental to the integrity and standing of the bar and the administration of justice, and would not be contrary to the public interest. Therefore, by a 6-to-3 vote, the Board recommended that Mr. Bowden be reinstated to the practice of law upon successful completion of the bar examination. The Board of Governors further recommended that:

> [I]n the event the Supreme Court grants Mr. Bowden's petition for reinstatement, the Board of Governors be directed by the Court to retain jurisdiction, and to examine into and to recertify the petitioner's good moral character after he has successfully completed the Bar Examination and before he should be actually readmitted to practice.

We turn now to consider whether we should adopt this recommendation. The major consideration in reinstatement proceedings is "whether the petitioner has affirmatively shown that he has overcome those weaknesses that produced his earlier misconduct". *In re Johnson*, 92 Wn.2d 349, 350, 597 P.2d 113 (1979). The applicant for reinstatement must demonstrate that "his or her reinstatement will not be detrimental to the integrity and standing of the Bar and the administration of justice, or be contrary to the public interest". DRA 8.6(a).

This case is virtually identical to the recent reinstate-

ment decision of this court, *In re Batali*, 98 Wn.2d 610, 657 P.2d 775 (1983). In that case we applied the eight criteria set forth in *In re Eddleman*, 77 Wn.2d 42, 44, 459 P.2d 387, 461 P.2d 9 (1969). The application of those criteria convinced us that Mr. Batali's petition for reinstatement should be granted.

The present case differs from *Batali* in only one significant respect. In Mr. Batali's case, the amount of restitution to be paid was approximately $40,000. Mr. Batali had begun only shortly before his petition to repay the obligations to his victims, after voluntarily reaffirming those debts which had been discharged in bankruptcy. In the present case, on the other hand, Mr. Bowden has continued his scheduled restitution plan from 1975 until the present, and has only about $3,000 left to pay his victims, exclusive of Transamerica Title Insurance Company. This determined and substantially completed effort at restitution provides a further reason for granting Mr. Bowden's petition for reinstatement. (Mr. Bowden's substantial efforts at restitution also convince us it is unnecessary to subject his readmission to continuing supervision by the bar association to ensure his compliance with the plan of restitution. *Cf. In re Batali*, 98 Wn.2d at 619–20.)

Having been convinced that Mr. Bowden has successfully rehabilitated himself and deserves readmission into the legal profession, we adopt the recommendation of the Board of Governors. Mr. Bowden is readmitted to the practice of law on condition that he successfully complete the bar examination, and that the bar association recertify his good moral character to this court prior to his readmission.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, and DIMMICK, JJ., concur.