IN THE MATTER OF ROBERT A. HOLLIS, AN ATTORNEY
AT LAW.

Argued November 29, 1983—Decided February 3, 1984.

*Colette A. Coolbaugh,* Counsel, argued the cause for complainant Disciplinary Review Board.

*John P. Libretti* and *Nino D. Cariddi,* argued the cause for respondent (*Libretti and Weston,* attorneys).

PER CURIAM.

This disciplinary matter was originally before us on January 12, 1982, the return day of an order to show cause why the respondent, a member of the bar of this State, should not be disbarred or otherwise disciplined because of his allegedly inappropriate conduct involving five different matters. We were satisfied upon our review at that time that a substantial suspension period was warranted. (The Disciplinary Review Board had recommended a two-year suspension.) We were advised then that five additional complaints against the respondent were pending before the District Ethics Committee. We therefore suspended the respondent temporarily commencing January 21, 1982 pending completion of those proceedings.

The District Ethics Committee held hearings on the additional complaints. The entire matter was then reconsidered by the Disciplinary Review Board, which recommended that respondent be suspended for a three-year period, commencing as of January 21, 1982. After our initial review we remanded one aspect of the cause, possible misappropriation of trust funds, for a further hearing before the District Ethics Committee. This has been completed and we have had oral argument on the entire record.

Based on our independent review, we have come to the same conclusions as the Disciplinary Review Board on the Moretti, Schultz, Medaska, Koehl, Cherevas, Messimer, Oskoniewski complaints and the proctorship matter. We adopt the Board's following findings and conclusions in those respects:

[A.] MORETTI MATTERS

Beginning in March of 1978, the respondent was retained by Salvatore Moretti to represent him personally and to represent his company, the ROR Construction Corporation, in three separate matters.

## 1.) MORETTI v. BOARD OF ADJUSTMENT OF HACKEN-SACK AND FRIENDSHIP HOUSE

Moretti retained the respondent to institute suit against the Board of Adjustment of Hackensack and Friendship House in connection with a zoning variance. A complaint was filed in April 1978 with the Superior Court, Law Division, Bergen County. On October 25, 1978, the complaint was dismissed by the Honorable Theodore Trautwein, J.S.C. for failure to prosecute, since respondent neither served nor attempted to serve the summons and complaint. Although respondent thereafter communicated with his client on numerous occasions, he failed to advise Moretti that the matter had been dismissed. To the contrary, respondent advised Moretti that a hearing was scheduled for November 17, 1978. Moretti retained new counsel in April of 1979.

## 2.) ROR CONSTRUCTION CORPORATION v. BOARD OF ADJUSTMENT AND JADEMOR INDUSTRIAL COMPANY

Respondent was also retained by Moretti to represent ROR Construction Company in a suit against Jademor Industrial Company and the Hackensack Board of Adjustment. Although respondent prepared and filed a complaint, docketed as L–323–78, with the Superior Court, Law Division, Bergen County, he failed to serve the summons and complaint upon the defendants. Respondent then misrepresented the status of the case to his client on several occasions by stating that they were awaiting a court date.

In April 1979, the file was turned over to Moretti's new counsel.

## 3.) MORETTI ET ALS v. MULTI–PAK CORPORATION

In a third case, Moretti retained respondent to institute suit against Multi-Pak Corporation to obtain a restraining order to prevent Multi-Pak from maintaining a nuisance. A complaint

was never filed, although the complainant testified that respondent had advised to the contrary. The respondent denied so advising his client. He testified that he was told by the law clerk to the Bergen County Chancery Judge that more than one affidavit was necessary to obtain a restraining order. Respondent claimed to have so advised his client.

In addition, respondent stated that the attorney for Multi-Pak had verbally agreed that the company would institute noise abatement procedures. That agreement was not confirmed in writing. Respondent testified that until his client again complained to him in the fall of 1978, he assumed that the matter was resolved.

Although respondent had not filed a complaint in the matter, a bill dated June 16, 1978 paid by Moretti reflected charges for 3½ hours of work in the preparation of the complaint as well as for a $60 filing fee. Moretti obtained a copy of the complaint from respondent in December 1978 and filed it with the Superior Court.

\*     \*     \*     \*     \*     \*     \*     \*

## [B.] SCHULTZ MATTER

In January of 1979, Richard Schultz retained the respondent to assert a claim and obtain monetary damages to pay for psychiatric care for his son necessitated by injuries sustained by the child. Respondent's sole activity with regard to the case was to write one letter on the complainant's behalf. He failed to pursue the matter although he was aware of the importance of a successful conclusion of the matter to the psychological well-being of the child. Additionally, he failed to communicate with Schultz who telephoned him at his home and his office. He did, however, direct a letter to Schultz requesting that his client not call him at home any longer.

In May 1979, Schultz retained new counsel. The respondent failed to comply with the attorney's request to forward the Schultz file.

\*     \*     \*     \*     \*     \*     \*     \*

## [C.] MEDASKA MATTER

In early June 1979, Kenneth and Jeanne Medaska purchased a residence in Oakland, New Jersey. They were represented by the respondent at the June 1 closing in that matter. A mortgage law [sic] was obtained from the Washington Savings Bank of Hoboken, New Jersey, and a mortgage check for $30,000 was issued by that bank to the respondent on May 31, 1979. That check was deposited by respondent in his trust account on June 1. Although the first mortgage held by Columbia Savings and Loan Association was paid off on June 14, 1979, a credit check undertaken on July 30 revealed that the mortgage was still recorded as open on that date, and that neither the deed to the purchasers nor the Washington Savings Bank mortgage had been recorded.

On August 6, 1979, following several unsuccessful attempts to reach the respondent, a Washington Savings Bank official advised respondent's secretary that an ethics complaint would be filed due to his failure to record the mortgage. On that same day, respondent forwarded the mortgage to the bank for recording. Both the deed and mortgage were actually recorded on August 7, 1979.

   *     *     *     *     *     *     *     *

## [D.] PROCTORSHIP

At the first hearing before the Board, on June 17, 1981, we reviewed correspondence from Walter Whitman, Esq., who had previously agreed to act as proctor for the respondent's law practice. That correspondence indicated that the respondent had failed to supply an inventory of all of his pending cases and had failed to maintain contact with the proctor. Respondent represented that he had forwarded the requested list to Mr. Whitman more than one month before the Disciplinary Review Board hearing. He further indicated that he could have been more diligent in a number of the matters complained of but had no excuse for his conduct. In addition, he stated that he had undergone psychiatric treatment for 16 to 18 months, ending in

June of 1980. He indicated that the psychiatrist had helped in certain areas, particularly with respondent's tendency to hold up on matters.

\* \* \* \* \* \* \* \*

### [E.] KOEHL MATTER

In January 1978, respondent was retained by Theresa Koehl to represent her in a no-fault divorce action. Respondent received a fee of $610 from Koehl in June 1977 and filed a complaint for divorce on her behalf. Respondent, however, failed to properly issue process or seek the entry of default. The complaint was eventually dismissed for lack of prosecution. Respondent thereafter falsely advised Koehl on at least two occasions that her case was listed for trial and, when she appeared at his office, continued to make other misrepresentations to his client in order to explain the alleged delays in the processing of the matter.

\* \* \* \* \* \* \* \*

### [F.] CHEREVAS COMPLAINT

Chris Cherevas hired respondent to represent him in a matrimonial matter in June 1978. Respondent filed a complaint on behalf of Cherevas and effected service upon his wife in New York. However, respondent failed to secure a default judgment and allowed the action to be dismissed for lack of prosecution.

\* \* \* \* \* \* \* \*

### [G.] MESSIMER MATTER

Respondent was retained by Jean D. Messimer in June 1980 to pursue a claim against a moving company for lost furniture. Although a claim form was submitted to the company, respondent admits that he did not effectively pursue the matter on behalf of his client. Further complicating his failure to act on her behalf, respondent periodically advised Messimer that a settlement was forthcoming, which was not true.

\* \* \* \* \* \* \* \*

### [H.] OKONIEWSKI MATTER

In a stipulation entered into by respondent and the Division of Ethics and Professional Services following the completion of the hearings before the Committee, respondent admitted that he was retained by Gail Okoniewski to represent her in a personal injury case. A complaint was filed in the Superior Court during September of 1979. Thereafter, respondent took no action on the case.

Although he did not pursue this matter after filing the complaint, respondent, during the next several years, continually misled his client as to the status of the action. On numerous occasions respondent advised Okoniewski that the case had been set for trial but had to be adjourned for various reasons. He specified that the case was being actively pursued and would go to trial in May 1982. In actuality no work was done on the case by respondent after September 1979.

### *Guimes*

The Guimes complaint was most troubling. It was this complaint that we had remanded to the District Ethics Committee for additional hearings. Respondent had been retained by Janice A. Guimes to represent her in the purchase of a newly constructed condominium. The purchase price was $90,000, of which $30,000 was to be financed by a loan from Carteret Savings and Loan Association ("Carteret"), to be secured by a purchase money mortgage. Carteret also had a lien in the form of a construction mortgage of $40,535 on the premises.

The closing was held on October 15, 1980. At the closing respondent held Carteret's check for $30,000, representing the proceeds from the purchase money mortgage. These funds in addition to $10,535 were to be paid to Carteret to satisfy its construction mortgage. It is not clear when and how the $10,535 was transmitted to Carteret. Respondent deposited the $30,000 Carteret check in his trustee account on October 20, 1980. Thereafter, until April 6, 1981, when Carteret was paid

the balance due on its construction mortgage lien, the trust account did not contain the entire $30,000.

Between October 31, 1980 and November 21, 1980 the respondent drew an aggregate amount of $4125 out of the trust funds. He claimed the withdrawal was inadvertent and offered the following explanation. Respondent had received $4125 in cash from a client, Cornelius Haarmann, during a dinner engagement. Respondent forgot that he had put this money in a file in the basement of his home. Believing that he had deposited the $4125 in his trustee account, respondent proceeded to write checks in connection with the Haarmann matter in that amount. It should be noted that respondent did not maintain a clients' trust ledger or any of the other required bookkeeping records. *See R.* 1:21–6. Respondent attempted to satisfy the Carteret mortgage by delivering to the attorney for the seller a check for $30,000, but there were insufficient funds in the account.

The respondent had also drawn an additional $1875 out of the trust account mistakenly believing this amount represented the balances due him on two other matters. Until the Client's Security Fund auditor drew up a schedule of deposits and withdrawals from the trust account, respondent was unaware of these errors. The District Ethics Committee and Disciplinary Review Board believed that respondent did not "go into [his] trust account to take money out." The trust account errors were corrected in April 1981 when Carteret was paid the amount due. Carteret had also made a claim against the Chicago Title Insurance Company for and had been paid the interest on the $30,000 for the five-month delay. Respondent has been reimbursing the insurance company for this loss at the rate of $100 per month.

In addition to the failure to pay Carteret promptly, respondent also was deficient in not forwarding to Carteret the tax reserve, prepaid interest, and the usual documents such as affidavits of title, certificate of occupancy, and the original note.

As we have seen from the other matters under consideration, this conduct was characteristic.

As we previously observed, the District Ethics Committee and the Disciplinary Review Board were satisfied that the respondent's defalcation resulted from his inadequate and sloppy recordkeeping. The respondent mistakenly drew the checks that caused the trust account to be out of balance. Respondent admitted his ineptness with respect to office administration. His secretary confirmed this situation and sought, to no avail, to have the respondent maintain an efficient system. Though we accept his contention that his trust account violations were inadvertent, the respondent's failings nonetheless constitute serious misconduct.

*Conclusions*

A common theme runs throughout all these matters, a failure to meet the demands of each case. His lack of diligence was egregious. Indeed, he aggravated his failings by misleading his clients, failing to communicate with them, and defaulting in the transmittal of documents when they were due. He even was delinquent in furnishing an inventory list of his cases to an attorney who had agreed to act as his proctor. It is conduct typified by the respondent that brings the profession into disrepute with the public. It is inexcusable. Respondent has violated DR 1–102(A)(4), (5) and (6), DR 6–101(A)(1) and (2), and DR 7–101(A)(2), and *R.* 1:21–6.

We are sympathetic with the fact that respondent endured some trying personal problems involving his children's physical conditions during some of the period when these misadventures occurred. Moreover, respondent has been under psychiatric care off and on for some years. However, those circumstances, though of a mitigating nature, do not excuse his conduct. Respondent is to be suspended from the practice of law for a period of three years, commencing as of January 21, 1982, the date of his temporary suspension. Upon his return to practice,

he shall not be permitted to practice law except under the supervision of a member of the bar. Accordingly, when respondent seeks reinstatement, he shall inform us of the name of the attorney and the details of the proposed supervisory arrangement. The terms and conditions shall, of course, be subject to our approval. When seeking reinstatement, respondent shall also submit to us a report of a psychiatrist based on a recent examination indicating respondent's capability to resume the practice of law.

Respondent shall reimburse the Administrative Office of the Courts for costs.

*For suspension* —Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed* —None.

## ORDER

It is ORDERED that ROBERT A. HOLLIS of HACKENSACK is suspended from the practice of law for a period of three years, effective January 21, 1982, and until the further order of this Court; and it is further

ORDERED that respondent's restoration to the practice of law shall be subject to his submission of current psychiatric evidence that he is capable of resuming the practice of law; and it is further

ORDERED that, upon restoration, respondent shall not be permitted to practice law except under the supervision of a member of the bar after obtaining approval from this Court of the terms and conditions of such supervision; and it is further

ORDERED that ROBERT A. HOLLIS reimburse the Administrative Office of the Courts for costs in this matter; and it is further

ORDERED that ROBERT A. HOLLIS be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent comply with all the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys.