[No. C.D. 4974.   En Banc.   July 2, 1987.]

*In the Matter of the Disciplinary Proceeding
Against* JOHN M. ROSELLINI, *an
Attorney at Law.*

Schweppe, Krug & Tausend, P.S., by *Fredric C. Tausend* and *Kenneth G. Whitaker*, for petitioner.

*Robert T. Farrell*, for Bar Association.

DOLLIVER, J.—John M. Rosellini, disbarred on May 20, 1982, petitions for reinstatement as an attorney in Washington. He requests review of the order of the Washington State Bar Association Board of Governors recommending against reinstatement. We grant conditional reinstatement subject to restrictions discussed below.

John M. Rosellini was admitted to the bar in 1973. Prior to his admission, he had served as a State Representative for the 34th District. He has worked as an attorney in private practice, and was the Democratic candidate for State Attorney General in 1980.

Rosellini was disbarred by this court in 1982 for misuse of his client trust account and funds. The circumstances of the conduct leading to his disbarment are recounted in *In re Rosellini*, 97 Wn.2d 373, 646 P.2d 122 (1982). This court in a 5-to-3 decision adopted the recommendation of the Disciplinary Board to disbar Rosellini. *In re Rosellini*, at 374.

Since his disbarment, Rosellini has made extensive efforts to reestablish his life, his livelihood, and his reputation in the community. After the events leading to his defeat in the race for Attorney General and disbarment, Rosellini sought professional psychiatric help in the summer of 1982 from Dr. Raymond Vath. He has received therapy regularly and continues in therapy to the present

time at a reduced frequency. He has shown a steadily improving record of employment, from route salesman for a beer wholesaler, "test barn" supervisor at Longacres, real estate seller, consultant for King County, and employee in the King County real property division, to his current employment as a deputy review officer for the Washington State Department of Employment Security. He obtained his real estate license after making a satisfactory showing of rehabilitation to the Department of Licensing. He has handled acquisitions, sales, and leases of property for King County.

After his disbarment, Rosellini continued to be listed as "atty" in the phone book. Rosellini stated he called the telephone company and asked for his listings as an attorney to be removed and was unaware it had not been done. Whenever others have approached him to perform legal work since his disbarment, he has informed them he was disbarred and could not accept.

Rosellini notes he has not received assistance from his self–described "prominent and well–to–do family" to help him recover financially. The record reflects he has demonstrated financial responsibility with regard to his personal obligations since his disbarment.

Rosellini petitioned for reinstatement in August of 1985. The bar association appointed Ronald E. McKinstry as special state bar counsel to conduct an investigation concerning the petition and to assure all relevant information was brought before the Board of Governors. The special counsel obtained and reviewed all relevant documentation from the bar association and from Rosellini. He took the depositions of Rosellini and Dr. Vath. Dr. Vath concluded, based on his diagnosis and the results of his treatment, it was highly unlikely Rosellini would repeat the conduct leading to his disbarment. Dr. Vath did recommend Rosellini practice with or under the supervision of other attorneys to provide additional guidance and support for him. In addition, special counsel hired two expert psychologists to evaluate Dr. Vath's conclusions. The psychologists agreed

Rosellini's increased age, the punishment he received for his misconduct and the benefits of treatment supported the conclusion that Rosellini in all probability would not engage in similar misconduct. They further agreed with Dr. Vath's suggestion that Rosellini initially maintain close association with other attorneys.

Special counsel also investigated complaints filed by four individuals against Rosellini prior to his disbarment and concluded none of the complaints justified disciplinary action such as suspension or disbarment. He made extensive efforts to solicit other comment in support of or opposition to the reinstatement of Rosellini, by directly contacting Rosellini's former clients, his past and present employers, and by publication of notices soliciting comment published in the Washington State Bar News and several major newspapers throughout the state. Despite the extensive efforts to solicit comments, only four letters in opposition were received, in contrast to well over 100 letters in support of reinstatement. The letters of opposition primarily reflected not personal objections to Rosellini, but resistance to the reinstatement of any attorney disbarred for prior misconduct, particularly trust fund violations. The conclusion of special bar counsel was to recommend reinstatement. He also concluded the evidence suggested Rosellini should practice under some form of supervision, in order to implement the recommendations of Dr. Vath and the expert psychologists and to provide further protection for the public.

On February 15, 1986, the Board of Governors held a full–day hearing regarding the petition. The Board heard the testimony of several witnesses. The testimony of Rosellini comprised the major portion of the hearing. He was subjected to cross examination by special bar counsel and direct questioning by most of the members of the Board of Governors. On March 25, 1986, the Board of Governors issued an order recommending against reinstatement by an 8–to–1 vote. The Board's findings of fact stated: (1) Rosellini had shown his character, standing and professional

reputation prior to disbarment was good; (2) Rosellini was sincere, frank and truthful in his presentation and discussion of his disbarment and potential reinstatement; and (3) it is unlikely Rosellini as a practicing attorney would in the future engage in misconduct similar to that leading to his disbarment. The Board nevertheless found, due to the gravity of his offense and the amount of time elapsed since his disbarment, that reinstatement would be detrimental to the integrity and standing of the judicial system and contrary to the public interest. In addition to the order, most of the members of the Board wrote or signed comments supporting their positions on the recommendation. Rosellini now petitions for review of the order pursuant to RLD 9.6(b).

I

■ The major consideration in reinstatement proceedings, as we have consistently stated, is whether the disbarred attorney has overcome those weaknesses which produced the earlier misconduct. *In re Egger,* 93 Wn.2d 706, 707, 611 P.2d 1260 (1980); *In re Johnson,* 92 Wn.2d 349, 350, 597 P.2d 113 (1979); *In re Eddleman,* 77 Wn.2d 42, 44, 459 P.2d 387, 461 P.2d 9 (1969). This court has specifically utilized eight criteria in making this assessment:

> (a) the applicant's character, standing, and professional reputation in the community in which he resided and practiced prior to disbarment; (b) the ethical standards which he observed in the practice of law; (c) the nature and character of the charge for which he was disbarred; (d) the sufficiency of the punishment undergone in connection therewith, and the making or failure to make restitution where required; (e) his attitude, conduct, and reformation subsequent to disbarment; (f) the time that has elapsed since disbarment; (g) his current proficiency in the law; and (h) the sincerity, frankness, and truthfulness of the applicant in presenting and discussing the factors relating to his disbarment and reinstatement.

*In re Eddleman,* at 44. We turn now to review the evidence regarding each of these criteria.

■ (a) Applicant's character, standing, and professional

reputation in the community prior to disbarment. In applying this criterion in prior cases, this court has reviewed the petitioner's community activities, letters from members of the community regarding character and professional reputation, and the existence of any other disciplinary actions against the attorney. *See, e.g., In re Batali,* 98 Wn.2d 610, 615, 657 P.2d 775 (1983); *In re Egger, supra* at 708; *In re Lonergan,* 23 Wn.2d 767, 773–74, 162 P.2d 289 (1945). Rosellini's community activities have reflected a consistently high reputation prior to his 1980 defeat. He served three terms in the Washington State House of Representatives and was selected by his party as the candidate for Attorney General. He was Italian Vice–Consul for the Pacific Northwest and was active in the Italian community. He was and continues to be involved in various church and school activities. The numerous letters received by the bar association from colleagues, acquaintances, clients, attorneys, employers, and the public reflect an overwhelming amount of genuine regard for Rosellini's character and reputation. With regard to his bar association record, no other disciplinary actions had been taken against Rosellini prior to his disbarment although there had been four unrelated complaint letters on file. Special bar counsel thoroughly investigated each of these complaints by reviewing the records and interviewing those involved. We agree with the conclusion of special bar counsel that none of these complaints would ever have justified disciplinary action such as suspension or disbarment.

■ (b) Ethical standards observed in the practice of law. In reviewing this criterion, the Board of Governors below mistakenly interpreted it to include consideration of the misconduct which led to disbarment. Our opinions applying this criterion demonstrate instead an inquiry into the attorney's conduct outside of those specific events leading to disbarment. *See, e.g., In re Batali,* at 615 ("[a]s to the ethical standards observed by Mr. Batali in the practice of law prior to the events which led to his disbarment in 1975, there is no indication of previous misconduct . . .");

*In re Johnson,* 92 Wn.2d 349, 351, 597 P.2d 113 (1979) (petitioner "did not have a history of unethical or questionable professional conduct"). Consideration of the misconduct itself is reserved for consideration in criterion (c). In Rosellini's case, the bar investigation did not reveal any ethical violations beyond those leading to disbarment. Further, the letters received in support of the petition for reinstatement indicate that Rosellini conducted himself in an ethical manner prior to his misuse of client trust funds.

(c) The nature and character of the charge leading to disbarment. We have stated "no charge strikes deeper into the heart of our profession than the proven allegation that an attorney has invaded his client's funds." *In re Smith,* 85 Wn.2d 738, 742, 539 P.2d 83 (1975). Trust fund violations regularly lead to disbarment. *See In re Rentel,* 107 Wn.2d 276, 286, 729 P.2d 615 (1986); *In re Stock,* 104 Wn.2d 273, 280, 704 P.2d 611 (1985); *In re Rosellini,* 97 Wn.2d 373, 377–78, 646 P.2d 122 (1982) (listing 46 prior cases of disbarment for trust account violations). Rosellini himself described misuse of client trust funds as the most serious offense a lawyer can commit short of a violent crime. He has recognized the gravity of his offense throughout the bar proceedings.

The long–standing policy of this court has been that the gravity of the misconduct in itself should not preclude reinstatement if the attorney can establish he has rehabilitated himself. *In re Bruener,* 178 Wash. 165, 167, 34 P.2d 437 (1934). It is almost universally recognized by other jurisdictions that disbarment is not a permanent disability. Annot., *Reinstatement of Attorney After Disbarment, Suspension, or Resignation,* 70 A.L.R.2d 266, 276 (1960) (and cases cited therein). Upon a proper showing that the petitioner has overcome those weaknesses producing his earlier misconduct, a disbarred attorney may be reinstated. *In re Egger,* 93 Wn.2d 706, 611 P.2d 1260 (1980); *In re Eddleman,* 77 Wn.2d 42, 43, 459 P.2d 387, 461 P.2d 9 (1969). Based upon such proof of rehabilitation or reformation, this court has in the past reinstated attorneys disbarred for

serious trust fund violations. *In re Batali, supra; In re Lillions,* 196 Wash. 272, 82 P.2d 571 (1938). Although we recognize the contrary view which would resist reinstatement of a disbarred attorney at any time, that view is not supported by the body of law in this state, nor by the weight of authority in other jurisdictions.

■ (d) The sufficiency of punishment and the making or failure to make restitution. Rosellini has been severely punished for his transgressions. Any disbarred attorney suffers both personally and professionally. He publicly destroyed his reputation during the exposure of his misconduct in almost daily newspaper coverage in the last month of the 1980 Attorney General campaign. He lost the election and his public career ended. Over the years of his disbarment he has suffered additional public embarrassment, shame, and financial hardship. Previous decisions considering this criterion have measured the sufficiency of the punishment by whether it will be unlikely for the disbarred lawyer to forget the oath of attorney in the future. *In re Walgren,* 104 Wn.2d 557, 572, 708 P.2d 380 (1985); *In re Krogh,* 85 Wn.2d 462, 479, 536 P.2d 578 (1975). Rosellini has fully realized the severity of his offense. The Board of Governors agreed with the conclusion of Dr. Vath and others that Rosellini will not be likely again to forget his attorney's oath.

In regard to restitution, Rosellini made restitution prior to public disclosure of his offenses and over 2½ years before the disbarment proceedings. No money was lost by either the Brandt heirs or the Italian Consulate. Rosellini has fully repaid the bank loan taken out to replace the funds removed from the Italian Consulate account.

■ (e) Attitude, conduct, and reformation since disbarment. An attitude of repentance helps assure the court and the public that the attorney recognizes his past wrongdoing and will not repeat it in the future. *In re Hiss,* 368 Mass. 447, 457, 333 N.E.2d 429 (1975). The record here makes evident Rosellini's appreciation of the seriousness of his offense, perhaps more than most other attorneys, as well as

his remorse for his wrongdoing and his own sincere belief in his complete rehabilitation. He has promised he will never again forget his ethical responsibilities. He has not attempted to justify his actions, nor has he expressed bitterness regarding the punishment he has received.

His conduct since disbarment has shown his efforts to conduct his life in a responsible and honest manner. To his credit, he sought professional counseling to help him understand and overcome the traits that contributed to his transgressions. He has worked in increasingly responsible occupations. Letters received from his employers have praised his honesty, integrity, and work performance. Although his principal energies since disbarment have been devoted to his work and the support of his wife and four children, he has participated where possible in community activities. He has been involved in his church and in activities at his children's schools. He served briefly as an assistant probation volunteer at the Seattle Municipal Court probation office. Although some members of the Board of Governors commented upon his continued listing as an attorney in the telephone directory, there is no reason to disbelieve Rosellini's assertion he requested the removal of the attorney designation. The record supports the Governors' finding "[i]t is unlikely that [he] would in the future engage in trust account violations . . ." This is all that could be predicted for the reinstatement of any attorney. In the words of one of the members of the Board of Governors, "Rosellini has gone through a period of hardship with dignity, character and purpose. He seems to have overcome the adversity which his weakness brought upon him."

(f) The time that has elapsed since disbarment. The purpose of this criterion is to postpone reinstatement until sufficient time has passed to enable the attorney to demonstrate actual conduct worthy of trust and confidence. *In re Lonergan*, 23 Wn.2d 767, 771, 162 P.2d 289 (1945). The central concern is not the absolute time since disbarment, but the length of time during which exemplary conduct is demonstrated. Although the bar association notes the aver-

age period of disbarment before reinstatement has been 7 years, reinstatement after 4 years is not unusual or disproportionate in Washington law. *In re Walgren, supra; In re Egger, supra; In re Lillions, supra; In re Bruener, supra.* Further, RLD 9.1(a) governing reinstatement permits petitions 3 years after disbarment, indicating reinstatement may occur after that amount of time. This court has never denied reinstatement based solely on the passage of less than 3 or 4 years, nor has it ever denied reinstatement where the petitioner has demonstrated rehabilitation through 5 years of exemplary behavior. Rather, each denial has been based on an identifiable failure to demonstrate rehabilitation. *In re Eddleman,* 77 Wn.2d 42, 45, 459 P.2d 387, 461 P.2d 9 (1969); *In re Simmons,* 71 Wn.2d 316, 320–21, 428 P.2d 582 (1967); *In re Seijas,* 63 Wn.2d 865, 870, 389 P.2d 652 (1964); *In re Durham,* 59 Wn.2d 185, 187, 367 P.2d 126 (1961); *In re Gowan,* 141 Wash. 523, 525–26, 251 P. 773 (1927). Adherence to the *Eddleman* factors requires us to consider the individual facts and circumstances of the particular attorney rather than adherence to statistical averages. Based upon prior case law, RLD 9.1(a), and the facts of the present case, we find the time elapsed has been sufficient to demonstrate Rosellini's rehabilitation. Nothing more would be proved regarding Rosellini's rehabilitation by the mere passage of additional time as a disbarred attorney.

(g) and (h) <u>Current proficiency in the law; sincerity, frankness, and truthfulness in discussing factors relating to disbarment and reinstatement.</u> The final two criteria also support a determination of rehabilitation. In regard to his proficiency in the law, Rosellini has continued to review the official advance sheets and has attended a bar examination review course. Rosellini has demonstrated his sincerity, frankness, and truthfulness throughout both the disbarment and reinstatement proceedings. Special bar counsel commented favorably on his truthfulness and sincerity and many of the letters regarding Rosellini's reinstatement support this conclusion. The Board of Governors made a spe-

cific finding that Rosellini had fully satisfied this criterion.

Our review of the *Eddleman* factors leads us with reasonable confidence to a conclusion that the petitioner has been rehabilitated.

## II

Special bar counsel recommended to the Board of Governors that Rosellini's reinstatement be conditioned upon the supervision of his work by an experienced attorney for a certain length of time. The suggestion was based upon the opinions of Dr. Vath and the consulting experts. Rosellini has stated he has no objection to conditional reinstatement under such conditions, as he already intends to seek employment under the supervision of other attorneys. He has never contended he would need the supervision to avoid ethical violations. He has promised, and the evidence supports his assertion, he will never again misuse his trust account.

In several prior cases, this court has conditioned the practice of attorneys upon their compliance with specific requirements. In *In re Malone,* 107 Wn.2d 263, 268, 728 P.2d 1029 (1986), this court placed the attorney on probation for 2 years during which his handling of trust accounts shall be closely monitored by the bar association. In *In re Batali,* 98 Wn.2d 610, 657 P.2d 775 (1983), a disbarred attorney was reinstated subject to the condition he make reasonable progress toward full restitution of the debts attributable to his misconduct. The bar association was directed to provide continual supervision of his compliance with the repayment schedule for restitution. In *In re Koehler,* 95 Wn.2d 606, 628 P.2d 461 (1981), the attorney was permitted to continue to practice upon condition that for 2 years she periodically provide review of her accounting system for client billing. In *In re Sherman,* 66 Wn.2d 718, 404 P.2d 978 (1965), practice was conditioned upon compliance with a voluntary psychiatric treatment program for a 3-year period. In *In re Rentel,* 107 Wn.2d 276, 729 P.2d 615 (1986), although this court entered a judgment of disbar-

ment, the hearing officer initially recommended a 10–year probationary period, increased from 5 years at the attorney's request, including treatment, drug tests, and supervision by a committee of three attorneys. *In re Rentel,* at 280.

The Rules for Lawyer Discipline specifically provide for probation as an appropriate sanction. RLD 5.2(a) provides:

> A lawyer who has been found to have committed an act of misconduct and who has been sanctioned pursuant to rule 5.1 may in addition be placed on probation for a fixed period not in excess of 2 years, under such conditions as may appear appropriate. Such conditions may include but are not limited to requiring alcohol or drug treatment, requiring medical care, requiring psychological or psychiatric care, requiring professional office practice or management counseling, and requiring periodic audits or reports. In any case where a lawyer is placed on probation pursuant to this rule, the chairperson of the Board may upon the request of state bar counsel appoint a suitable person to supervise the probation. Cooperation with a person so appointed shall be a condition of the probation.

Other jurisdictions have also imposed conditions of probation, even after periods of disciplinary suspension or disbarment. *Smith v. State Bar,* 38 Cal. 3d 525, 698 P.2d 139, 213 Cal. Rptr. 236 (1985); *Florida Bar v. Neely,* 488 So. 2d 535 (Fla. 1986); *In re Hogan,* 112 Ill. 2d 20, 490 N.E.2d 1280 (1986); *In re Siegel,* 294 Md. 635, 452 A.2d 414 (1982); *In re Moore,* 387 N.W.2d 435 (Minn. 1986); *In re Hollis,* 95 N.J. 253, 471 A.2d 10 (1984); *In re Crist,* 258 Or. 88, 481 P.2d 74 (1971).

The American Bar Association has also endorsed the use of probation as an appropriate method of attorney discipline. Probation allows a lawyer to practice law under specified conditions and may be imposed alone, in conjunction with other discipline, or after disbarment. *ABA Standards for Imposing Lawyer Sanctions,* Std. 2.7 (Approved Draft, 1986). We have recognized the ABA standards as a helpful analytical framework. *In re Rentel,* at 282.

We believe conditional reinstatement is appropriate in

the present case, providing a gradual and supervised reentry into the profession. To the extent any doubts remain about Rosellini in the minds of the bar or the public, they will be better dispelled by observing and supervising his performance in practice than by requiring him to sit idly by while awaiting a later opportunity to reapply for reinstatement.

Rosellini may not be reinstated until he has passed the bar examination and taken his oath as an attorney. His practice is then conditioned upon the appointment of an experienced attorney as supervisor for a minimum period of 3 years. We direct Rosellini to cooperate with the bar association in making this appointment. We also direct him, under the supervision of the appointed attorney, to provide quarterly reports to the Board of Governors certifying his compliance with the Rules of Professional Conduct. We further direct the bar association to conduct an annual audit of his accounts during this period. Should Rosellini fail to comply with any of these terms, he will be subject to a disciplinary proceeding under RLD 1.1(b). After 3 years, Rosellini may petition for termination of the probation upon submission to the bar association of an affidavit stating he has complied with the conditions of his reinstatement and is of good moral character such as to warrant termination of the probation. The bar association must then certify to this court Rosellini is of good moral character and qualified to practice law without supervision. *In re Bowden,* 99 Wn.2d 684, 689, 663 P.2d 1349 (1983). We note that by the end of this 3-year period it will be well over 10 years since the original misconduct leading to disbarment.

Although we recognize RLD 5.2(a) specifies a maximum of 2 years of probation, the attorney for Rosellini stated at oral argument a period of 3 years would be acceptable. We see no reason why a longer period may not be imposed where agreed to by the disciplined attorney and no objection is raised by the bar association. *In re Rentel,* at 298 (Goodloe, J., dissenting). We find this limited waiver of the provisions of RLD 5.2(a) is appropriate under the circum-

stances of this case and under our inherent power to dispose of individual cases of lawyer discipline. RLD 2.1.

■ We recognize our disposition of this case departs from the recommendation of the Board of Governors. The recommendations of the bar association, although given great weight, are advisory only, and the ultimate decision lies with this court. *In re Belsher,* 102 Wn.2d 844, 854, 689 P.2d 1078 (1984); *State ex rel. Schwab v. Washington State Bar Ass'n,* 80 Wn.2d 266, 271, 493 P.2d 1237 (1972). This court has departed from the recommendation of the Board of Governors in the past regarding whether to reinstate an attorney. *In re Shain,* 24 Wn.2d 598, 166 P.2d 843 (1946); *In re Lillions,* 196 Wash. 272, 82 P.2d 571 (1938); *In re Bruener,* 178 Wash. 165, 34 P.2d 437 (1934).

■ We have based this decision upon the long–standing doctrine of this court and of virtually every other jurisdiction that disbarment is not a permanent disability. Upon a proper showing of rehabilitation, an attorney may be reinstated. We believe a detached and thorough review of the record demonstrates Rosellini's rehabilitation.

In making our decision, we are guided by the philosophy that our most fundamental responsibility is the fair adjudication of all cases, including bar discipline cases. In the eyes of some, we could perhaps enhance the reputation of the profession by casting out permanently those the public perceives as wrongdoers. Public perceptions, however, many times are formed without thorough consideration of the conduct and character of the petitioner. *See In re Krogh,* 85 Wn.2d 462, 501–02, 536 P.2d 578 (1975) (Utter, J., dissenting). We believe the fair application of long–established principles of law to the fully developed record of facts in this case will best fulfill our responsibility and ultimately will best preserve the honor of the profession.

We grant conditional reinstatement for the petitioner, subject to the restrictions discussed herein.

PEARSON, C.J., UTTER and DURHAM, JJ., and WILLIAMS, J. Pro Tem., concur.

BRACHTENBACH, J., concurs in the result.

CALLOW, J. (concurring)—I concur in the result. Under RLD 9.1 a petition for reinstatement may not be filed within a period of 3 years after disbarment. That period of time has passed and the petitioner is permitted to apply for readmission under the rule. However, while mechanistic rules often work injustices in specific situations, I submit that the rule specifies too short a time between disbarment and a petition for readmission for this court to objectively evaluate whether an applicant has been rehabilitated. Rehabilitation means, among other things, that the applicant—when faced with similar temptations to those which caused previous violations of the Rules of Professional Conduct—will stand up to those temptations and not perform dishonest acts again. Certainly the evaluation of whether a disbarred lawyer has so changed his character as to be certifiable as meeting the standards appropriate to perform the responsibilities of an officer of the courts of the state is a nebulous and uncertain duty.

The order recommending against reinstatement of the petitioner stated in part:

1. John M. Rosellini has demonstrated that his general character, standing and professional reputation in the community in which he practiced prior to disbarment, namely, Seattle, King County, Washington, was good.

2. Mr. Rosellini was sincere, frank, and truthful in his presentation and discussion of the factors relating to his disbarment and potential reinstatement.

3. It is unlikely that John M. Rosellini, as a practicing attorney, would in the future engage in trust account violations similar to those which led to his disbarment.

4. Despite his general good character, standing and reputation in his community prior to disbarment, John M. Rosellini did not, in his practice of law and prior to his disbarment, observe and maintain the high ethical standards expected and required of an attorney at law and officer of the court, as demonstrated by the facts which led to his disbarment. The nature of the trust account violations involved, as noted more fully in Find-

ing of Fact 5, infra, is among the most serious and severe transgressions of those ethical standards.

5. The offenses for which Mr. Rosellini was disbarred were extremely serious, involved severe transgressions of his professional and fiduciary duties as an attorney, and in the opinion of the Board are of such a nature as to militate against reinstatement, at least at this time. The record is clear as to the frequency of the trust account violations involved and the fact that those violations were serious and intentional. The record is also clear that Mr. Rosellini compounded his violation of his duty to the public and to the Bar by falsely and knowingly alleging that his trust account was properly maintained and filing a sworn statement to that effect with the State Bar Association.

6. The time elapsed since Mr. Rosellini's disbarment is insufficient to justify the granting of this Petition for Reinstatement. The Court in *In re Walgren,* 104 Wn.2d 557 (1985), stated that "the sufficiency of time determination is made by weighing the nature of the offense against the time which has elapsed subsequent to disbarment: and that "a disbarred attorney should not be reinstated until sufficient time has elapsed to enable him to actually demonstrate by conduct that he is, in fact, worthy of trust and confidence." John M. Rosellini was disbarred on May 20, 1982. While there is no absolute time period set for reinstatement in such a case, insufficient time has passed in this particular case, and in view of the nature of the offense, for Mr. Rosellini to establish that, as an attorney, he is in fact worthy of public trust and confidence. The Board in fact finds that such has not been demonstrated or established.

The standards proposed by the American Bar Association in this area are as follows:

Disbarment — Readmission. The court has exclusive power to readmit a disbarred lawyer.

The lawyer should not be able to apply for readmission until at least five years after the effective date of disbarment and should not be readmitted unless he can show by clear and convincing evidence: rehabilitation, fitness to practice, competence and compliance with all applicable discipline or disability orders and rules.

American Bar Ass'n Joint Comm. on Professional Disci-

pline, *Professional Discipline for Lawyers and Judges* (1979).

I agree with the approach of the American Bar Association rule. I concur in the result because a period of 5 years has now gone by and the major basis for denial of readmission, as set forth by the Board of Governors, was that insufficient time had passed since disbarment. As stated by the majority, the requirement that time elapse after disbarment before an application for readmission can be filed exists to postpone reinstatement until the attorney has demonstrated conduct worthy of trust and confidence. An application for readmission should not be permitted until at least 5 years has elapsed since disbarment. To my mind 3 years is insufficient time for an applicant for readmission to demonstrate that a misuse of client funds will not happen again.

The majority of the members of the Board of Governors stated that the length of time that had expired since the petitioner had been disbarred was insufficient for a proper evaluation to be made as to rehabilitation and qualification to practice law. One member (with whom two others concurred) stated:

> In light of the seriousness of the offenses . . . and doubts about his rehabilitation, four to five years of disbarment is not sufficient.

Another said:

> I do not feel that sufficient time has elapsed to enable the applicant to demonstrate that he is, in fact, worthy of trust and confidence. The time that has elapsed is brief when compared to other cases involving lawyers who were disbarred for trust account violations.

And, yet another stated:

> I do not believe that sufficient time has elapsed that I can say that public confidence in the legal system would be maintained if John Rosellini were to be reinstated at this time.

Lastly, another said:

Regarding the nature of the offense, the "sufficiency of time determination is made by weighing the nature of offense against the time which has elapsed subsequent to disbarment." . . . In recent years, however, where the character and nature of the offense has involved trust account violations, the time between suspension and reinstatement has been longer. *In re Batali,* 98 Wn.2d 610, 657 P.2d 775 (1983) (8 years); *In re Johnson,* 92 Wn.2d 349, 597 P.2d 113 (1979) (11 years).

A number of these members of the Board of Governors expressed doubts as to whether the petitioner had yet demonstrated an appreciation of the standards of conduct required of an attorney and a concern about their ability, in so relatively short a time, to put their stamp of approval on the petitioner. The rule permitting an application for readmission should not specify only a 3–year period when the result is an almost unanimous conclusion by experienced and respected members of the bar that the time period is too short to tell whether a person who acted dishonestly will now practice law with integrity and according to the Rules of Professional Conduct. I do not reiterate the findings of the Board or the individual statements of its members to rehash the circumstances pertaining to the particular petitioner involved here. I set forth those findings and statements because they excellently illustrate the reason for extending the time period for all applicants for readmission. When doubt remains, reinstatement should be denied. *In re Eddleman,* 77 Wn.2d 42, 43, 459 P.2d 387, 461 P.2d 9 (1969). RLD 9.1(a) should be amended to require the passage of 5 years between disbarment and application for readmission.

It has been said that each denial of readmission in the past has been based on an identifiable failure to demonstrate rehabilitation. I submit that rehabilitation cannot be demonstrated or judged until the perspective of time permits a proper appraisal of character. I submit that human experience demonstrates and the Board of Governors of the American Bar Association has concluded that 3 years is not enough.

The handwriting of the majority is on the wall. I concur in the result rather than engage in pointless dissent in an attempt to have the provisions of RLD 9.1 objectively reconsidered by the bench and bar of the state.

ANDERSEN, J., and NOE, J. Pro Tem., concur with CALLOW, J.